ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Nov-13 12:23:27
60CV-19-8063
C06D02 : 7 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY. ARKANSAS
_____ DIVISION

**I SQUARE MANAGEMENT LLC and**
**ARKANSAS KNOXVILLE HOTEL, LP**                              **PLAINTIFFS**

    **v.**                    **CASE No. CV-2019-_____**

**MCGRIFF INSURANCE SERVICES, INC.**                          **DEFENDANT**

### COMPLAINT

Come now the Plaintiffs, I Square Management LLC and Arkansas Knoxville Hotel, LP, by and through their attorneys, Bequette, Billingsley and Kees, P.A., and for their Complaint, state:

### I.   PARTIES

1.    Plaintiff I Square Management LLC ("I Square") is a limited liability company doing business in the State of Arkansas. I Square's Manager and Registered Agent is Shashwat Goyal. ("Goyal"). Goyal is Chairman and Chief Executive Officer of I Square.

2.    Plaintiff Arkansas Knoxville Hotel, LP ("Arkansas Knoxville Hotel") is a limited partnership with its principal address in Little Rock, Pulaski County, Arkansas. Its registered agent is Heather Michelle Sanders, 1 Information Way, Suite 200, Little Rock, Arkansas.

3.    Defendant McGriff Insurance Services, Inc. ("McGriff") is an Arkansas corporation doing business in Arkansas. McGriff's registered agent is The Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

### II.   JURISDICTION AND VENUE

4.    This is a cause of action in negligence related to errors and omissions by McGriff and its agents which occurred in Pulaski County, Arkansas.

5.    All parties conduct business and have offices in Pulaski County, Arkansas.

6.    Jurisdiction and venue is proper before this Court.

### III.   FACTS

7.      I Square is a hospitality and management company that manages hotels and other properties in multiple states.

8.      I Square managed a Marriott Hotel ("Marriott") renovation project in Knoxville, Tennessee (the "Project"). The Marriot Hotel is owned by Arkansas Knoxville Hotel.

9.      The Project included a floor-by-floor renovation of the Marriott, located at 501 East Hill Avenue, Knoxville, Tennessee.  A nearby warehouse was rented for storage of inventory owned by Arkansas Knoxville Hotel, which was to be used to by the refurbished Marriott.  The warehouse was located at 1605 Prosser Road, Knoxville, Tennessee.

10.      In the course of the Project a large rainstorm caused flooding in the Knoxville area, which resulted in a substantial loss on or around February 23, 2019 to inventory owned by Knoxville Hotel and stored at the warehouse. The inventory was necessary for the Project.

11.      The total value of the destroyed inventory exceeds $1,143,846.53.

12.      At the time of the loss, I Square had an ongoing relationship with McGriff for its insurance needs, dating back at least two years prior to the loss.  Goyal, had continuous and ongoing communications with Nicholas Hall, who at all times relevant to the allegations in this Complaint served as McGriff's account executive for I Square and worked closely with I Square for its ongoing insurance needs.

13.      Hall had ongoing communications with Goyal regarding the insurance needs for I Square and for the Project, including Hall advising I Square of the specific insurance that was needed for the Project.

14.      Hall was supervised by John Pierron ("Pierron"), the senior vice president for McGriff.

15.     McGriff procured for I Square an insurance policy through The Liberty Mutual Fire Insurance Company ("Liberty Mutual"), policy number YU2-L9L-467767-118, issued to I Square, for insurance coverage for the Project. The policy included flood loss coverage. A complete and certified copy of the policy is not presently available to Plaintiffs, but is in the possession of McGriff, as it procured the policy for I Square.

16.     The schedule of locations covered under the policy for flood coverage included the Marriot Hotel at 501 East Hill Avenue, Knoxville, Tennessee, the location of the Project. *See* Liberty Mutual Commercial Policy, hereto attached as Exhibit 1.

17.     It was I Square's reasonable belief that it had insurance coverage, including flood coverage, for all aspects of work being before performed on the Project, as represented to it by McGriff.

18.     Unbeknownst to I Square, McGriff had ill-advised I Square of its insurance needs for the Project; as such, I Square did not have insurance to cover the flood loss.

19.     Arkansas Knoxville Hotel owned the inventory damaged by the loss and was an additional insured on the policy personnel the location schedule to the policy.

20.     Liberty Mutual advised I Square in a May 1, 2019 letter ("the Denial Letter") that the loss at issue was not covered because the property damaged by the flood was located at a storage warehouse at 1605 Prosser Road in Knoxville, Tennessee, not on site at the Marriott, hereto attached as Exhibit 2.

21.     Hall was aware that the Project involved a floor-by-floor renovation of the Marriott, which remained in operation during construction. Hall was aware the floor-by-floor renovation included extensive remodeling and the addition of new furniture and fixtures. Hall knew this inventory was being stored at an off-site warehouse capable of storing large quantities of inventory

in climate-controlled facilities.  With this knowledge, Hall advised I Square as to the specific insurance I Square needed for the Project to ensure full coverage in the case of a loss.

22.     Hall was directly informed by agents of financial investors for the Project that a builder's risk policy was necessary for I Square.  Hall assumed the duty to locate the price for such a policy and initiated the application process for I Square.

23.     Hall contacted Liberty Mutual about a builder's risk policy and came to the enormous and ill-advised conclusion that such a policy was not necessary, because Hall had determined that I Square's general liability policy with Liberty Mutual would provide full property limit protection to the Project in the event of a loss.

24.     Hall ultimately advised I Square, in writing, that a builder's risk policy was not necessary for the Project and that the Project was fully covered in the event of a loss.

25.     I Square relied on Hall's representations, as I Square had previously relied on Hall for the insurance needs of I Square in connection with its multiple other ongoing hotel renovation projects, all if which also included off-site storage of inventory.  Through McGriff's course of dealings with I Square it was fully aware inventory was being stored off-site for the other hotel renovation projects.

26.     Hall, acting for McGriff, and with the knowledge of his supervisor, Pierron, researched and investigated the specific insurance that was needed for the Project and came to the mistaken conclusion that a builder's risk policy was not necessary and the Liberty Mutual general liability policy in place was sufficient to protect I Square in event of a loss.  Hall communicated this in writing to Goyal and his representations were relied on.

27.     Hall was ultimately wrong in his advice to I Square, which resulted in I Square and Arkansas Knoxville Hotel not having sufficient coverage for the loss sustained at the Project.

28.     The negligence on the part of Hall, an agent for McGriff, has resulted and continues to result in substantial damages to I Square and Arkansas Knoxville Hotel.

## COUNT I - NEGLIGENCE

29.     Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs, verbatim herein.

30.     I Square had an ongoing relationship with McGriff for its insurance needs for at least two years prior to the loss at issue.

31.     I Square and McGriff were in a special relationship, as evidenced by their ongoing relationship over a long period of time, with Hall knowledgeable of I Square's business affairs and the work being performed on the project owned by Arkansas Knoxville Hotel.

32.     Hall regularly gave advice to I Square as to its insurance needs and advised it in maintaining proper coverage for I Square, which included coverage for the Arkansas Knoxville Hotel.

33.     McGriff entered into a special relationship with I Square and owed it a duty to protect I Square's interest as to its insurance needs.

34.     Based on the special relationship between McGriff and I Square and the duty owed by McGriff to I Square, I Square reasonably relied on McGriff's representations that a builder's risk policy was not necessary for the Project.

35.     But for the erroneous advice of Hall, an agent of McGriff, I Square would have purchased a builder's risk policy, which it desired to do and as a result would have had adequate insurance coverage for the loss to the Project.

36.     The acts and omissions of McGriff and Hall have substantially damaged I Square and Arkansas Knoxville Hotel.

5

## COUNT II - DAMAGES

37.     Plaintiffs reassert each and every allegation contained in the preceding paragraphs, verbatim herein.

38.     I Square's and Arkansas Knoxville Hotel's damages are a direct result and were proximately caused by the acts and/or omissions of McGriff.

39.     The Project is currently suspended due to the loss of inventory and the lack of any insurance proceeds to replace the inventory, in order that the Project could continue.

40.     The suspension of the Project has caused investors of the Project to withdraw future funding and investment.     Subcontractors on the Project have filed separate lawsuits seeking payment, which has caused Plaintiffs to incur legal expenses.

41.     I Square's losses include, but are not limited to, lost revenues from its management of the Project.

42.     Arkansas Knoxville Hotel's losses include the destruction of its inventory, related replacement expenses, business interruption and other related expenses.

43.     Plaintiffs' losses continue to accrue and will be proven at trial.

44.     Plaintiffs reserve the right to amend their Complaint, add parties, add claims, conduct discovery and plead further.

45.     Plaintiffs demand trial by jury on all matters triable by jury.

46.     Plaintiffs seek their attorney's fees and costs to the extent they are available under applicable law.

WHEREFORE, Plaintiffs, I Square Management LLC and Arkansas Knoxville Hotel, LP, pray that their Complaint be granted, all their damages, together with all costs and post-judgment interest as set forth hereinabove and all other proper relief to which they are entitled.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Telephone: (501) 374-1107
Fax: (501) 374-5092
E-mail: ckees@bbpalaw.com

By: *Cody Kees*
    Jay Bequette, Bar Number 87012
    Cody Kees, Bar Number 2012118

      *Attorneys for Plaintiffs*

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Nov-13 12:23:27
60CV-19-8063
C06D02 : 89 Pages



# COMMERCIAL POLICY

YU2-L9L-467767-118

I SQUARE MANAGEMENT LLC
1 INFORMATION WAY STE 200
LITTLE ROCK AR 72202-2290

Liberty Mutual is the marketing name for the property and casualty insurance operations of Liberty Mutual Group Inc.  Products may be written in the following stock insurance company subsidiaries of Liberty Mutual Group Inc.:

    Liberty Mutual Insurance Company
    Liberty Mutual Fire Insurance Company
    Liberty Insurance Corporation
    LM Insurance Corporation
    The First Liberty Insurance Corporation
    Liberty Insurance Company of America
    Liberty Surplus Insurance Corporation
    Liberty County Mutual Insurance Company
    Wausau Business Insurance Company
    Wausau Underwriters Insurance Company
    Employers Insurance Company of Wausau

Not all products and coverages are available in all companies or jurisdictions.



Policy Number  YU2-L9L-467767-118
Issued by        Liberty Mutual Fire Insurance Company

## ANNUAL MEETING NOTICE

Your policy is issued by a stock insurance company subsidiary of the Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company.  The named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company.  The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com or by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02116, Attention: Corporate Secretary.

## PARTICIPATING PROVISION

You may be eligible to participate in the distribution of surplus funds of the company through any dividends that may be declared for this policy.  A declaration or payment of dividends is not guaranteed.  The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

**In witness whereof,** the company has caused this policy to be signed by its President and its Secretary.

SECRETARY                     PRESIDENT





## RM SELECT™ POLICY

## POLICY REFERENCE INDEX

This INDEX is to help **you** read **your** Policy. It is not a part of the Policy and is in no way a substitute for reading **your** entire Policy.

**Your** Policy may or may not include all of the forms, endorsements, coverages and provisions listed in this INDEX. Refer to the POLICY INDEX, Form RM0003, for a list of forms and endorsements that are included on **your** policy.

PLEASE READ **YOUR** POLICY CAREFULLY!

| | Form Number | Beginning on Page |
|---|---|---|
| **ANNUAL MEETING NOTICE** | LIL 90 04 | |
| **POLICY INDEX** | RM0003 | |
| **STATE OR MUNICIPAL TAXES, SURCHARGE AND OTHER MISCELLANEOUS CHARGES SUMMARY** | RM0005 | |
| **DECLARATIONS** | RM1000 | |
| Named Insured and Mailing Address | | 1 |
| **Policy Period** | | 1 |
| Policy Premium | | 1 |
| A.  Insuring Agreement | | 2 |
| B.  Coverages | | 2 |
| C.  **Limits of Liability** | | 2 |
| D.  Standard Extensions of Coverage | | 2 |
| E.  Optional Extensions of Coverage – Sublimits of Liability | | 2 |
| F.  Equipment Breakdown Coverage | | 3 |
| G.  Deductible and waiting periods | | 4 |
| Schedule | | 5 |
| **COVERAGES** | RM1001 | |
| A.  **Real Property** | | 1 |
| B.  **Personal Property** | | 1 |

© 2013 Liberty Mutual Insurance. All rights reserved.

**POLICY REFERENCE INDEX – (CONTINUED)**

| | Form Number | Beginning on Page |
|---|---|---|
| **COVERAGES – (CONTINUED)** | RM1001 | |
| C.  Loss of **Business Income** | | 1 |
| D.  **Extra Expense** | | 3 |
| E.  Equipment Breakdown | | 4 |
| **EXTENSIONS OF COVERAGE** | RM1002 | |
| A.  Standard Extensions of Coverage | | 1 |
| 1.  Accounts Receivable | | 1 |
| 2.  Arson Reward | | 2 |
| 3.  Computer Virus and Denial of Access | | 2 |
| 4.  Debris Removal Expense | | 3 |
| 5.  Deferred Payments | | 3 |
| 6.  Duty to Defend | | 3 |
| 7.  Extended **Period of Restoration** | | 4 |
| 8.  Fire Department Charges | | 4 |
| 9.  **Fine Arts** | | 4 |
| 10.  **Fungus** Cleanup Expense | | 4 |
| 11.  Installation of **Personal Property** or **Personal Property of Others** | | 5 |
| 12.  Lock and Key Replacement | | 5 |
| 13.  **Personal Property** of Employees | | 5 |
| 14.  Plants, Trees or Shrubs | | 5 |
| 15.  **Pollution** Cleanup Expense | | 5 |
| 16.  Professional Fees | | 6 |
| 17.  Removal | | 6 |
| B.  Optional Extensions of Coverage | | 6 |
| 1.  Course of Construction | | 6 |
| 2.  Errors and Omissions | | 7 |
| 3.  Exhibitions, Expositions, Fairs or Trade Shows | | 7 |
| 4.  **Miscellaneous Locations** | | 7 |
| 5.  **New Locations** | | 7 |
| 6.  Demolition Cost, Increased Construction Cost and Operation of Building Laws | | 8 |
| 7.  Salespeople | | 8 |
| 8.  **Transit** | | 9 |
| 9.  **Unscheduled Locations** | | 9 |
| **EXCLUSIONS** | RM1003 | |
| A.  **GROUP A EXCLUSIONS** | | 1 |
| B.  **GROUP B EXCLUSIONS** | | 3 |
| **PROPERTY NOT COVERED** | RM1004 | |
| **VALUATIONS** | RM1005 | |
| A.  Replacement Cost | | 1 |

**POLICY REFERENCE INDEX – (CONTINUED)**

|  | Form Number | Beginning on Page |
|---|---|---|
| **VALUATIONS – (CONTINUED)** | RM1005 | |
| B. **Actual Cash Value** | | 1 |
| C. Other Valuations | | 2 |
| **CONDITIONS** | RM1006 | |
| A. Abandonment of Property | | 1 |
| B. Appraisal | | 1 |
| C. Assignment | | 1 |
| D. Brands and Labels | | 1 |
| E. Breach of Condition | | 1 |
| F. Cancellation | | 1 |
| G. Change of Terms | | 2 |
| H. Collection from Others | | 3 |
| I. Concealment, Misrepresentation or Fraud | | 3 |
| J. Inspection | | 3 |
| K. Liberalization | | 3 |
| L. Loss Payee | | 3 |
| M. Mortgage Holders | | 4 |
| N. No Benefit to Bailee | | 4 |
| O. No Reduction by Loss | | 4 |
| P. Nonrenewal | | 4 |
| Q. Other Insurance | | 5 |
| R. **Our** Options | | 5 |
| S. Pair, Set or Parts | | 5 |
| T. Payment of Loss | | 5 |
| U. **Policy Period** and Territory | | 6 |
| V. Recovered Property | | 6 |
| W. Right to Adjust with Owner | | 6 |

## POLICY REFERENCE INDEX – (CONTINUED)

| | Form Number | Beginning on Page |
|---|---|---|
| **CONDITIONS – (CONTINUED)** | RM1006 | |
| X. Subrogation | | 6 |
| Y. Suit | | 6 |
| Z. Suspension | | 7 |
| A.A. Titles of Paragraphs | | 7 |
| B.B. Vacancy | | 7 |
| C.C. Your Duties After a Loss | | 8 |
| **DEFINITIONS** | RM1007 | |
| A. Accident | | 1 |
| B. Actual cash value | | 1 |
| C. Average daily value (ADV) | | 1 |
| D. Business income | | 1 |
| E. Covered location(s) | | 2 |
| F. Covered loss | | 2 |
| G. Covered property | | 2 |
| H. Data | | 2 |
| I. Data processing equipment | | 2 |
| J. Earth movement | | 2 |
| K. Effective date | | 2 |
| L. Extra expense | | 2 |
| M. Fine arts | | 2 |
| N. First tier wind Counties and Parishes | | 2 |
| O. Flood | | 3 |
| P. Fungus | | 3 |
| Q. Hail | | 3 |
| R. Limit(s) of liability | | 3 |
| S. Media | | 3 |

POLICY REFERENCE INDEX – (CONTINUED)

|  | | Form Number | Beginning on Page |
|---|---|---|---|
| **DEFINITIONS – (CONTINUED)** | | RM1007 | |
| T. | Miscellaneous location(s) | | 3 |
| U. | Mobile equipment or tools | | 4 |
| V. | Named Storm | | 4 |
| W. | New location(s) | | 4 |
| X. | New Madrid | | 4 |
| Y. | Object(s) | | 4 |
| Z. | Occurrence | | 5 |
| A.A. | Perils insured against | | 5 |
| B.B. | Period of restoration | | 5 |
| C.C. | Perishable goods | | 6 |
| D.D. | Personal property | | 6 |
| E.E. | Personal property of others | | 6 |
| F.F. | Policy period | | 7 |
| G.G. | Pollutant(s) | | 7 |
| H.H. | Pollution | | 7 |
| I.I. | Puget Sound | | 7 |
| J.J. | Real property | | 7 |
| K.K. | Replacement cost | | 7 |
| L.L. | Second tier wind Counties and Parishes | | 7 |
| M.M. | Sinkhole collapse | | 7 |
| N.N. | Software | | 8 |
| O.O. | Specified perils | | 8 |
| P.P. | Transit | | 8 |
| Q.Q. | Unscheduled location(s) | | 8 |
| R.R. | Valuable papers and records | | 8 |
| S.S. | Volcanic activity | | 9 |
| T.T. | We, us and our(s) | | 9 |
| U.U. | Wind | | 9 |
| V.V. | You and your(s) | | 9 |

**POLICY REFERENCE INDEX – (CONTINUED)**

| | **Form Number** | **Beginning on Page** |
|---|---|---|

**ENDORSEMENTS**

    See POLICY INDEX

Policy Number YU2-L9L-467767-118

## RM SELECT™ POLICY

## POLICY INDEX

| TITLE | FORM NO. | EDITION DATE |
|-------|----------|--------------|
| ANNUAL MEETING NOTICE | LIL 90 04 | 06 13 |
| POLICY REFERENCE INDEX | RM0002 | 06-13 |
| POLICY INDEX | RM0003 | 02-11 |
| PRODUCER OF RECORD INFORMATION | EN4008 | 01-11 |
| NORTH CAROLINA ADVISORY NOTICE TO POLICYHOLDERS | SNP 32 05 | 02-13 |
| DECLARATIONS | RM1000 | 02-11 |
| COVERAGES | RM1001 | 09-08 |
| EXTENSIONS OF COVERAGES | RM1002 | 02-11 |
| EXCLUSIONS | RM1003 | 02-11 |
| PROPERTY NOT COVERED | RM1004 | 02-11 |
| VALUATIONS | RM1005 | 02-11 |
| CONDITIONS | RM1006 | 02-11 |
| DEFINITIONS | RM1007 | 02-11 |
| ADDITIONAL NAMED INSURED | RM1100 | 01-04 |
| SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES | RM1102 | 03-08 |
| EARTH MOVEMENT COVERAGE | RM1106 | 03-08 |
| FLOOD COVERAGE | RM1108 | 03-08 |
| INTERRUPTION OF SERVICES COVERAGE EXTENSION | RM1110 | 02-11 |
| ADDITIONAL DEDUCTIBLES AND WAITING PERIODS | RM1115 | 02-11 |
| STANDARD EXTENSIONS AMENDATORY | RM1119 | 03-08 |
| CAP ON LOSSES FROM CERTIFIED ACT(S) OF TERRORISM | RM1144R1 | 01-15 |
| ADDITIONAL TYPES OF PROPERTY NOT COVERED AMENDATORY | RM1150 | 05-12 |
| DEMOLITION COST, INCREASED CONSTRUCTION COST AND OPERATION OF BUILDING LAWS AMENDATORY | RM1156 | 12-12 |
| ADDITIONAL FIRST TIER WIND COUNTIES AND INDEPENDENT CITIES (THE STATES OF VIRGINIA THROUGH AND INCLUDING MAINE) | RM1158 | 11-12 |
| PROPERTY EXTENSION FOR HOTELS | RM1164 | 01-13 |
| EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE | RM1250 | 03-08 |
| ARKANSAS CHANGES | RM1803 | 10-17 |
| ARKANSAS CHANGES - CANCELLATION AND NONRENEWAL | RM1903 | 03-08 |
| ARKANSAS NOTICE TO POLICYHOLDERS | EN4003 | 01-10 |
| DISCLOSURE - TERRORISM RISK INSURANCE ACT | EN9052 | 01-15 |
| POLICYHOLDER NOTICE – COMPANY CONTACT INFORMATION | SNI 90 01 | 05 12 |

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

Policy number YU2-L9L-467767-118

## Important Notice

## PRODUCER OF RECORD INFORMATION

This policy has been issued by us to you through the following producer of record:

Name and Address of Producer of Record

MCGRIFF INSURANCE SERVICES, INC
1500 RIVERFRONT DR

LITTLE ROCK, AR 72202-1797

# NORTH CAROLINA
# ADVISORY NOTICE TO POLICYHOLDERS

North Carolina law requires the following warning:

WARNING:  THIS PROPERTY INSURANCE POLICY DOES NOT
PROTECT YOU AGAINST LOSSES FROM FLOODS, EARTHQUAKES,
MUDSLIDES, MUDFLOWS, LANDSLIDES, WINDSTORM OR HAIL.
YOU SHOULD CONTACT YOUR INSURANCE COMPANY OR AGENT
TO DISCUSS YOUR OPTIONS FOR OBTAINING COVERAGE FOR
THESE LOSSES.  THIS IS NOT A COMPLETE LISTING OF ALL OF THE
CAUSES OF LOSSES NOT COVERED UNDER YOUR POLICY.  YOU
SHOULD READ YOUR ENTIRE POLICY TO UNDERSTAND WHAT IS
COVERED AND WHAT IS NOT COVERED.

In conjunction with the foregoing (and reviewing the entire policy), note that this policy may include one (1) or more of the following forms or endorsements, which provide certain coverage:

Form RM1105, EARTH MOVEMENT SPRINKLER LEAKAGE EXTENSION
Form RM1106, EARTH MOVEMENT COVERAGE
Form RM1108, FLOOD COVERAGE

In addition, with the exception of a deductible, limitation, etc. (which will apply if contained in this policy), this policy only excludes wind or hail by endorsement (if any).

 © 2013 Liberty Mutual Insurance. All rights reserved



# RM SELECT™ POLICY

## DECLARATIONS

Policy number YU2-L9L-467767-118

Named Insured and Mailing Address

I Square Management Llc

1 Information Way Ste 200
Little Rock  AR  72202-2290

Form of Business Limited Liability Company

Premium Will Be Billed Monthly

**Policy Period:** 09/01/2018 to 09/01/2019 at 12:01 A.M. standard time at above mailing address.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with **you** to provide the insurance as stated in this policy.

Premium (Excluding premium for "certified act(s) of terrorism" under the Terrorism Risk Insurance Act (TRIA), as amended):

Premium for "certified act(s) of terrorism" under the Terrorism Risk Insurance Act (TRIA), as amended:

State or Municipal Taxes, Surcharges and Other Miscellaneous Charges: (See State or Municipal Taxes, Surcharges and Other Miscellaneous Charges Summary, Form RM0005, for breakdown)

Total Premium/Other Charges for Above Policy Period:
The Deposit Premium/Other Charges is:

Issued By: Liberty Mutual Fire Insurance Company

By:

Authorized Company Representative OR Countersignature (as required)

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

# DECLARATIONS (Continued)

**A.** Insuring Agreement

Subject to all the terms and conditions of this policy, **we** will pay for risks of direct physical loss or damage to **covered property** as a result of an **occurrence**, unless excluded.

If this policy provides Equipment Breakdown coverage then subject to all the terms and conditions of this policy **we** will pay for direct physical loss or damage to **covered property** as a result of an **accident** to an **object**, unless excluded.

This policy consists of the forms and endorsements shown on the POLICY INDEX, Form RM0003, and any endorsements attached to the policy. Insurance is provided at those locations and for those coverages and **limits of liability** shown on the Schedule of this form. Extensions of coverage, sublimits of liability and deductibles are listed on this form. Endorsements may contain separate terms, conditions, deductibles and limits or sublimits of liability.

Words in **bold faced type** have special meanings in this policy. They are defined in DEFINITIONS, Form RM1007. These definitions apply to this entire policy, and to any endorsements to it. Definitions that apply to individual forms or endorsements will be italicized and noted in those forms or endorsements. The names of forms are capitalized (for example, DECLARATIONS).

**B.** Coverages

**We** provide the following coverages if they are marked with an "X". Coverages are provided in accordance with the terms of this policy. Terms that apply only to individual coverage forms are set forth in those forms. This policy provides coverage on a replacement cost basis for **real property, personal property, personal property of others** and equipment breakdown except as indicated on VALUATIONS, Form RM1005, or any other forms or endorsements attached to this policy.

(X) **Real Property**
(X) **Personal Property**, including **personal property of others**
(X) Equipment Breakdown
(X) Loss of **Business Income**
    ( ) **Real Property** or **Personal Property** only
    ( ) Equipment Breakdown only
    (X) **Real Property** or **Personal Property** and Equipment Breakdown
(X) **Extra Expense**
    ( ) **Real Property** or **Personal Property** only
    ( ) Equipment Breakdown only
    (X) **Real Property** or **Personal Property** and Equipment Breakdown

**C.** **Limits of Liability**

**We** will not pay more than the applicable **limit of liability** shown on the Schedule of this form for any one (1) **occurrence** or any one (1) **accident** covered by this policy, nor will **we** pay for more than **your** interest in the lost or damaged property.

**D.** Standard Extensions of Coverage

Refer to **A.** of EXTENSIONS OF COVERAGE, Form RM1002, for the standard extensions of coverage, including sublimits of liability, provided by this policy.

**E.** Optional Extensions of Coverage – Sublimits of Liability

    **1.** The sublimits of liability shown in **E. 4.** below apply to the Optional Extensions of Coverage defined in **B.** of EXTENSIONS OF COVERAGE, Form RM1002. If no sublimit is shown, no coverage is provided.

    **2.** If a sublimit is shown in **E. 4.** below for **miscellaneous locations, new locations** and **unscheduled locations**, coverage may be limited or excluded elsewhere in this policy or its endorsements.

# DECLARATIONS (Continued)

3.  These sublimits are the most we will pay for any loss covered by these Optional Extensions of Coverage.  For **miscellaneous locations, new locations and unscheduled locations,** the most **we** will pay for any loss or damage will be the lesser of:

    a.  The sublimit shown below for **miscellaneous locations, new locations** or **unscheduled locations;** or

    b.  The sublimit shown on any individual coverage form or endorsement.

4.  Optional Extensions of Coverage:

    a.  $100,000              Course of Construction;

    b.  $See Form RMRM11      Demolition Cost;

    c.  $See Form RMRM11      Increased Construction Cost;

    d.  $See Form RMRM11      Operation of Building Laws;

    e.  $No Coverage          Errors and Omissions;

    f.  $50,000               Exhibitions, Expositions, Fairs or Trade Shows;

    g.  $50,000               at each **miscellaneous location;**

    h.  $2,500,000            at each **new location,** for up to 90 days from the date such **new location(s)** is first purchased or rented, whichever is earlier;

    i.  $50,000               on covered **personal property** in the custody of salespeople;

    j.  $50,000               **Transit;**

    k.  $No Coverage          at each **unscheduled location.**

F.  Equipment Breakdown Coverage

    1.  Equipment Breakdown **limit of liability**

        If marked with an "X" the following **limits of liability** apply:

        (X) See the Schedule of this form;

        ( )  See Form Not Applicable; or

        ( )  **Limit(s) of liability** shown below are separate from any other applicable **limit of liability** or any sublimit of liability of this policy.

        $Not Applicable       Damage to covered **object(s),** loss of **business income,** and **extra expense;**

        $Not Applicable       Damage to covered **object(s)** and loss of **business income;**

        $Not Applicable       Damage to covered **object(s)** and **extra expense;**

        $Not Applicable       Damage to covered **object(s);**

        $Not Applicable       Loss of **business income** and **extra expense;**

        $Not Applicable       Loss of **business income;**

        $Not Applicable       **Extra expense.**

## DECLARATIONS (Continued)

2. For equipment breakdown extensions of coverage see EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE, Form RM1250.

G. Deductible and waiting periods, except as indicated on any other forms or endorsements attached to this policy.

   1. $10,000. Unless marked with an "X" in **G. 2.**, or as provided in **G. 3.** below, we will not pay unless a **covered loss** from any one (1) **occurrence** exceeds the amount shown.

   2. (X) See ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

   3. Equipment breakdown deductibles or waiting periods will be applied as specified below:

      a. If **you** have a combined deductible, **we** will not pay unless a covered equipment breakdown loss from any one (1) **accident** is more than:

| | |
|---|---|
| $See **G.1.** above | for loss to covered **object(s)**, loss of **business income**, and **extra expense**; |
| $Not Applicable | for loss to covered **object(s)** and loss of **business income**; |
| $Not Applicable | for loss to covered **object(s)** and **extra expense** |

      b. If one (1) or more deductible amounts are shown below, each will be applied separately.

| | |
|---|---|
| $Not Applicable | Covered **object(s)**. |
| $Not Applicable | Loss of **business income** and **extra expense**. |
| $Not Applicable | Loss of **business income**. |
| $Not Applicable | **Extra expense**. |
| Not Applicable | times the **average daily value** of loss of **business income** or **extra expense** during the **period of restoration**. |
| Not Applicable | hours immediately following the **accident** for loss of **business income** or **extra expense**. |

      c. **We** will not pay for loss of **business income, extra expense**, or, to the extent **perishable goods** coverage is provided in EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE, Form RM1250, unless a covered equipment breakdown loss from any one (1) **accident** to an **object** exceeds a waiting period of Not Applicable hours.

      Once the waiting period has been exceeded coverage will begin at the initial time of the interruption, and will be subject to the deductibles shown in **G. 3.**

      d. ( ) See ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

Once a deductible or waiting period is exceeded, **we** will then pay for the excess, up to the applicable **limit of liability**.

If a **covered loss**, involves two (2) or more deductibles, **we** will use no more than the largest of the applicable deductibles except as provided in **G. 3. b.** or the ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

## DECLARATIONS (Continued)

Schedule

| No. | Location or Sub-location | Coverage | Limit of Liability |
|---|---|---|---|
| | All covered locations including coverage for Equipment Breakdown as per Statement of Values on file with **us**, except as scheduled below.  Insurance does not apply at locations and/or coverages at locations unless a specific value is provided by **you**. | Blanket **Real Property** | $95,130,518* |
| | | Blanket **Personal Property** | $24,500,000* |
| | | Blanket Loss of **Business Income** | $16,800,000* |
| | | Blanket **Extra Expense** | $100,000* |

*Limits include Equipment Breakdown

## DECLARATIONS (Continued)

List of Locations:

| Loc # | Address | City | State | Zip | Country |
|-------|---------|------|-------|-----|---------|
| 1 | 201 South Shackleford Road | Little Rock | AR | 72211 | |
| 2 | 160 Union Ave | Memphis | TN | 38103 | |
| 3 | 3121 Bankhead Dr | Little Rock | AR | 72206 | |
| 4.1 | 704 W Michigan St<br>Quality Inn and Suites - 1 | Stuttgart | AR | 72160 | |
| 4.2 | 704 W Michigan St<br>Quality Inn and Suites - 2 | Stuttgart | AR | 72160 | |
| 5 | 501 E Hill Ave | Knoxville | TN | 37915-2516 | |
| 7 | 206 Metha Ct | Hot Springs | AR | 71913-6182 | |
| 8 | 103 Lookout Cir | Hot Springs | AR | 71913 | |

# COVERAGES

A. If coverage for **real property** is provided as shown in **B**. Coverages of the DECLARATIONS, Form RM1000, **we** will pay for a **covered loss** to **your real property** at or within one-thousand (1,000) feet of a **covered location**.

B. If coverage for **personal property** is provided as shown in **B**. Coverages of the DECLARATIONS, Form RM1000, **we** will pay for a **covered loss** to **your personal property**, including **personal property of others** and **valuable papers and records**, at or within one-thousand (1,000) feet of a **covered location**.

C. If coverage for loss of **business income** is provided as shown in **B**. Coverages of the DECLARATIONS, Form RM1000, **we** will pay for:

    1. The actual loss of **business income you** incur during a **period of restoration** directly resulting from damage by a **peril insured against** to the type of property covered by this policy at a **covered location**.

    2. The necessary expenses **you** incur in excess of **your** normal operating expenses that reduces **your** loss of **business income**. **We** will not pay more than **we** would pay if **you** had been unable to make up lost production or continue operations or services.

    3. The actual loss of **business income you** incur if **you** are denied access to a **covered location** by order of civil or military authority if:

        a. the order results from a **covered loss**; or

        b. the order results from damage by a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location**.

    This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date of the order.

    4. The actual loss of **business income you** incur if **your** ingress to or egress from a **covered location** is prevented as the direct result of a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location**.

    This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date **your** ingress or egress is first prevented.

    5. In determining the actual loss of **business income**, consideration must be given to:

        a. The experience of the business before the loss and the probable experience after the loss;

        b. The continuation of only those normal charges and expenses that would have been incurred had no interruption of production or suspension of business operations or services happened;

        c. The demonstration of an actual loss of sales, income, or rental income; and

        d. Any amount recovered, at selling price, for loss or damage to merchandise that will be considered to have been sold.

    6. **We** will not pay unless **you** are wholly or partially prevented from:

        a. producing goods; or

        b. continuing business operations or services.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

## COVERAGES (Continued)

7.  You are required to mitigate **your** loss by:

    a.  Making up lost production within a reasonable period of time not limited to **the period of restoration**.

    b.  Continuing business operations or services during the **period of restoration**.

    c.  Using any property or service:

        (1) owned or controlled by **you**; or

        (2) obtainable from any other sources.

    d.  Working extra time or overtime.

    e.  Using inventory.

    **We** will not pay for any loss to the extent it can be reduced through these or any other means whether at a **covered location** or any other location.

8.  **We** will not pay for:

    a.  Any loss during any idle period. Idle period includes, but is not limited to, any period when production, operation or service would cease or be prevented due to:

        (1) physical damage not insured under this policy on or away from **the covered location**;

        (2) planned or rescheduled shutdown or maintenance;

        (3) strikes or other work stoppage; or

        (4) any reason other than a **covered loss.**

    b.  Any increase in loss due to:

        (1) suspension, cancellation or lapse of any lease, contract, license or order.

        (2) fines or damage for breach of contract for late or non-completion of orders, or for penalties of any nature.

    c.  Any consequential, indirect or remote loss.

    d.  Any loss resulting from damage to:

        (1) finished goods manufactured by **you**, nor for the time required for their reproduction.

        (2) property in **transit.**

    e.  Any loss or expense recoverable elsewhere in this policy.

9.  The most **we** will pay for a loss under this coverage is the lesser of:

    a.  **Your** actual loss of **business income** and necessary expense; or

    b.  The applicable **limit of liability** shown on the Schedule of the DECLARATIONS, Form RM1000, or any endorsements to this policy.

## COVERAGES (Continued)

**D.** If coverage for **extra expense** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, we will pay for:

    **1.** The actual **extra expense you** incur during a **period of restoration** directly resulting from damage by a **peril insured against** to the type of property covered by this policy at a **covered location.**

    **2.** The actual **extra expense you** incur if **you** are denied access to a **covered location** by order of civil or military authority if:

        **a.** the order results from a **covered loss**; or

        **b.** the order results from damage by a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location.**

    This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date of the order.

    **3.** We will not pay for:

        **a.** Loss of **business income.**

        **b.** Costs which would have been incurred in conducting **your** business during the same period had no **covered loss** happened.

        **c.** The cost of permanent repair or replacement of property that has been damaged or destroyed.

        **d.** Any loss during any idle period.  Idle period includes, but is not limited to, any period when production, operation or service would cease or be prevented due to:

            **(1)** physical damage not insured under this policy on or away from the **covered location;**

            **(2)** planned or rescheduled shutdown or maintenance;

            **(3)** strikes or other work stoppage; or

            **(4)** any reason other than a **covered loss.**

        **e.** Any increase in loss due to:

            **(1)** suspension, cancellation or lapse of any lease, contract, license or order.

            **(2)** fines or damage for breach of contract for late or non-completion of orders, or for penalties of any nature.

        **f.** Any consequential, indirect or remote loss.

        **g.** Any loss resulting from damage to:

            **(1)** finished goods manufactured by **you**, nor for the time required for their reproduction.

            **(2)** property in **transit.**

        **h.** Any loss or expense recoverable elsewhere in this policy.

RM1001 09-08

## COVERAGES (Continued)

4. The most **we** will pay for a loss under this coverage is the lesser of:

   a. **Your** actual **extra expense**; or

   b. The applicable **limit of liability** shown on the Schedule of the DECLARATIONS, Form RM1000, or any endorsements to this policy.

E. If coverage for equipment breakdown is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, the following provisions apply to loss or damage that results from or is caused by an **accident** to a covered **object**:

   1. Exclusions **B. 8., B. 9., B. 10.** and **B. 11.** in EXCLUSIONS, Form RM1003, do not apply to a **covered loss** that result from an **accident** to covered **object(s)**.

   2. **We** will pay if an **accident** to covered **object(s)** causes:

      a. Loss to property **you** own;

      b. Loss to the property of others in **your** care, custody or control and for which **you** are legally liable.

   3. If direct loss or damage to an electrical **object(s)** results from the peril of **flood** **we** will pay for the amount **you** actually expend to dry out the **object(s)**.

      **Our** payment to **you** will:

      a. Be subject to the applicable direct damage **limit of liability** and deductible as shown in **F. 1.** and **G. 2.** of the DECLARATIONS, Form RM1000, for damage to covered **object(s)**; and

      b. Not exceed the value of the damaged **object(s)**.

# EXTENSIONS OF COVERAGE

A. Standard Extensions of Coverage

In the event of a **covered loss**, the coverage provided by this policy is extended as follows:

1. Accounts Receivable

    a. **We** will pay up to a **limit of liability** of $100,000 for the following expenses **you** incur directly resulting from loss or damage by a **peril insured against** to **your** records of accounts receivable at a **covered location**:

    (1) Amounts due **you** from customers that **you** are unable to collect;

    (2) Interest charges on any loan to offset amounts **you** are unable to collect, pending **our** payment of those amounts;

    (3) Collection expense above **your** normal collection expense; and

    (4) Reasonable expenses **you** incur to reestablish **your** records of accounts receivable.

    b. For the purposes of this extension of coverage, the following additional exclusions apply and **we** will not pay for:

    (1) Any loss that requires an audit or inventory to establish its existence;

    (2) Any fraudulent, dishonest or criminal act done by:

        (a) Anyone entrusted with the accounts receivables, including their employees and agents; or

        (b) Anyone having an interest in the accounts receivable.

        This exclusion does not apply to the acts of a carrier for hire.

    (3) Bookkeeping, accounting, or billing errors or omissions.

    (4) Wrongful alteration, falsification, manipulation, concealment, destruction, or disposal of records of accounts receivable, committed to conceal the wrongful giving, taking, getting, or withholding of money, securities, or other property.

    c. When records of accounts receivable have been damaged or destroyed, **you** must use all reasonable efforts, including legal action if necessary, to obtain collection of any outstanding accounts receivable, and **we** will pay such costs and expenses of obtaining collection to the extent they reduce **your** loss.

    d. When records of accounts receivable have been damaged or destroyed, **you** will use any property or service owned or controlled by **you** or obtainable from other sources in order to reduce **your** loss.

    e. If **you** are unable to accurately determine the amount of outstanding accounts receivable at the time of loss, **our** payment will be calculated in the following manner:

    **Your** average monthly accounts receivable amount, based on the twelve (12) months preceding the loss, adjusted for normal fluctuations in the month in which the loss occurs, or for any demonstrated variance for that month.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

## EXTENSIONS OF COVERAGE (Continued)

    **f.**  The following will be deducted from the total amount of accounts receivable, regardless of the method used to determine that amount:

        **(1)** Balances for accounts not damaged or affected by the loss;

        **(2)** Amounts of accounts **you** are able to reestablish and collect;

        **(3)** An allowance for bad debts **you** are not normally able to collect; and

        **(4)** All unearned interest and service charges.

**2.**  Arson Reward

If one (1) or more **covered losses** are caused by or result from any fires of a suspicious nature, **we** will pay a $25,000 reward to an individual or individuals provided:

    **a.**  The individual(s) report(s) the suspected arsonist to local law enforcement officials; and

        **(1)** The arsonist is apprehended, brought to trial, and convicted of arson to **your covered property**; or

        **(2)** The arsonist is apprehended, confesses and/or pleads guilty to arson to **your covered property** without going to trial.

    **b.**  **Our** payment of this reward will not be increased by:

        **(1)** The number of individuals reporting the arsonist(s);

        **(2)** The number of arsonists involved in the **covered loss**; or

        **(3)** The number of **covered losses**.

No deductible applies to this extension of coverage.

**3.**  Computer Virus and Denial of Access

**We** will pay up to $25,000 for loss or damage to, or any cost, claim or expense caused by or resulting directly or indirectly from any of the following, regardless of any other cause or event that contributes to the loss, damage, cost, claim or expense at the same time or in any sequence:

    **a.**  The introduction of a malicious code, program, virus, worm, Trojan Horse program, macro time or logic bomb or similar unauthorized instruction which is designed or intended to damage, corrupt, destroy, distort, or delete any part of the system or disrupt its normal operation, into any of the following, whether owned by **you** or others:

        **(1)** **Data processing equipment, software, data, or media;**

        **(2)** Information repository;

        **(3)** Hardware or **software** based computer operating systems;

        **(4)** Microprocessors;

        **(5)** Integrated circuits;

        **(6)** Computer networks;

## EXTENSIONS OF COVERAGE (Continued)

    (7)  Website service; or

    (8)  Any other electronic equipment, computerized equipment, or similar device.

  **b.**  A change in the functionality, availability, operation, use of accessibility to or operation of any of the items described in **3. a. (1) - (8)** above.

**4.**  Debris Removal Expense

  **a.**  We will pay for the expense to remove the debris from a **covered loss**. We will only pay these expenses if **we** receive immediate written notice of the **covered loss** and if these expenses are reported to **us** in writing within one-hundred-eighty (180) days of the date of the **covered loss**.

  **b.**  Debris removal expense is limited to a sublimit of liability of $250,000.

  **c.**  We will pay up to $25,000 for expenses to remove from a **covered location**, windblown debris of property not covered by this policy.

  **d.**  Debris removal expense does not include any costs to clean up or remove **pollutants, fungus,** bacteria, wet or dry rot, or decay.

**5.**  Deferred Payments

  **a.**  We will pay up to a sublimit of liability of $25,000 for the uncollectable, unpaid balance owed **you** for direct physical loss or damage caused by or resulting from a **peril insured against** to **personal property** of the type covered by this policy that was sold by **you** under a conditional sale or trust agreement or any installment or deferred payment plan after the **personal property** has been delivered to **your** client and is now in their care, custody and control.

  **b.**  In the event of loss or damage caused by or resulting from a **peril insured against** to **personal property** sold under any of the payment plans shown in **5. a.** above, **you** will use all reasonable effort, including legal action against **your** client, to:

    (1)  Collect any outstanding balance due **you**; or

    (2)  Regain possession of the **personal property**.

  **c.**  We will not pay for loss or damage caused by or resulting from:

    (1)  A recall of **your** product. This includes but is not limited to **your** cost to recall, test or to advertise the recall.

    (2)  Theft or conversion of **your personal property** sold under any payment plan shown in **5. a.** above by **your** client after they have taken possession of the **personal property**.

  **d.**  This extension of coverage only applies to **your personal property** sold under any of the payment plans shown in **5. a.** above that is located within the territory of this policy.

  **e.**  Coverage provided by this extension does not apply if **your** client continues with their payments.

**6.**  Duty to Defend

  **We** will defend that part of any suit against **you** involving **personal property of others** when all of the following conditions exist:

## EXTENSIONS OF COVERAGE (Continued)

    **a.**  The suit seeks payment for physical loss or damage to the **personal property of others**; and

    **b.**  The physical loss or damage is caused by a **peril insured against**; and

    **c.**  The physical loss or damage takes place while the **personal property of others** is in **your** custody; and

    **d.**  The **personal property of others** is the type of property covered by this policy.

**We** will do so even if such suit is groundless, false or fraudulent, but **we** may, without prejudice, make such investigation, negotiation and settlement of any claim or suit, as **we** deem appropriate.

**7.**  Extended **Period of Restoration**

    **a.**  If loss of **business income** coverage is provided, **we** will pay the actual loss of **business income you** sustain due to a reduction in sales, earnings or rental income that directly results from direct physical loss or damage to **your covered property** by a **peril insured against**, for the additional time required, when **you** use reasonable speed, to restore **your** business to the condition it would have been in if no loss had occurred. This additional time starts with the time when the **period of restoration** would end, and continues for no more than sixty (60) consecutive days immediately following the **period of restoration**.

    **b.**  This extension of coverage does not apply if **you** elect not to either repair or replace **your covered property**, or to resume the operation of **your** business. For purposes of this extension of coverage the exclusions and restrictions in this policy regarding loss of **your** market share do not apply to any claim made under this extension of coverage.

**8.**  Fire Department Charges

**We** will pay charges **you** incur when the fire department is called to save or protect **covered property** from a **covered loss**.

**9.**  **Fine Arts**

**We** will pay up to a sublimit of liability of $100,000 for **covered loss** to **your fine arts**. **We** will not however pay for:

    **a.**  Loss or damage sustained from any repair, restoration, or retouching process;

    **b.**  Breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains, and similar fragile articles, unless caused by fire, lightning, aircraft, theft and or attempted theft, windstorm, **earth movement, flood**, explosion, vandalism, collision, derailment or overturn of conveyance; or

    **c.**  Loss or damage to **your fine arts** while away from a **covered location**.

**10.**  **Fungus** Cleanup Expense

    **a.**  If **fungus** results from a **covered loss** due to fire or lightning, **we** will pay up to the applicable **limit of liability** for the cost and expense:

        **(1)**  To remove **fungus** from **covered property** at a **covered location**;

        **(2)**  To repair or replace any undamaged portion of **covered property** at a **covered location** that must be removed to gain access to **fungus** in order to remove it; and

        **(3)**  To test for the presence of **fungus** on **covered property** at a **covered location** after **fungus** has been removed as provided by this extension.

## EXTENSIONS OF COVERAGE (Continued)

    **b.**  If **fungus** results from a **covered loss** due to a **peril insured against** other than fire or lightning, we will pay up to $250,000 for the costs and expenses outlined in **10. a. (1) – (3)** of this extension of coverage.

    **c.**  In order for this extension of coverage to apply we must receive immediate written notice of the **covered loss**, and these costs and expenses must be reported to **us** in writing within one-hundred-eighty (180) days of the date of the **covered loss**.

    **d.**  The removal and testing for **fungus** does not include any costs to remove **pollutants**.

**11.** Installation of **Personal Property** or **Personal Property of Others**

    **We** will pay up to $250,000 for direct physical loss or damage by a **peril insured against** to **your personal property**, or **personal property of others**, which **you** have sold under an installation agreement, if **your** responsibility continues until the purchaser accepts the installation.  Installation coverage applies to any non-owned location within the policy territory.

**12.** Lock and Key Replacement

    **a.**  When a master key or grand master key is lost or damaged from a **covered loss**, we will pay the lesser of:

        **(1)**  The actual cost to replace keys;

        **(2)**  The cost to rekey or reprogram the current locks to accept new keys; or

        **(3)**  When needed, new locks including the installation and reprogramming of the new locks.

    **b.**  The most **we** will pay in any one (1) **occurrence** for this extension of coverage is a sublimit of liability of $25,000.

**13.** **Personal Property** of Employees

    **We** will pay for loss or damage by a **peril insured against** to the **personal property** (other than vehicles) of **your** employees when such property is at a **covered location** or being used by the employee in the course of employment.  **We** will not pay for any loss or damage to such property that occurs at the employee's residence.

**14.** Plants, Trees or Shrubs

    **We** will pay up to a sublimit of liability of $100,000 for a **covered loss** to plants, trees and shrubs, however loss or damage caused by freezing, disease or drought is excluded.

**15.** Pollution Cleanup Expense

    **a.**  **We** will pay to remove **pollutants** from **covered property** at a **covered location** if the **pollution** results from a **specified peril**, subject to the applicable **limit of liability**.

    **b.**  **We** will pay up to an annual aggregate **limit of liability** of $25,000 to remove **pollutants** from **covered property** at a **covered location**, if the **pollution** results from a **peril insured against** other than a **specified peril**.

    **c.**  If **pollution** results from a **peril insured against**, **we** will pay up to an annual aggregate **limit of liability** of $25,000:

        **(1)**  To remove **pollutants** from land, soil, surface or ground water upon, within, beneath or comprising a **covered location**; or

        **(2)**  For testing performed in the course of extracting the **pollutants** from **covered locations**.

## EXTENSIONS OF COVERAGE (Continued)

We will pay for removal or testing after a **covered loss** that occurs during the **policy period.**

We will only pay these expenses if we receive immediate written notice of the **covered loss** and if these expenses are reported to **us** in writing within one-hundred-eighty (180) days of the date of the **covered loss.**

16. Professional Fees

    a.  **We** will pay up to $25,000 for the reasonable costs **you** incur, for auditors, architects, accountants and engineers whom **you** hire to prepare and verify the details of a claim from a **covered loss.**

    b.  Professional fees covered under this extension, however, do not include:

        **(1)** any fees or expenses of attorneys;

        **(2)** any fees or expenses of public adjusters or any of their subsidiaries or associated entities;

        **(3)** fees based on a contingency; or

        **(4)** the cost of **your** own employees.

17. Removal

    a.  We will pay the reasonable and necessary costs or expenses **you** incur:

        **(1)** to remove **covered property** from locations under imminent threat by a **peril insured against;** and

        **(2)** to return the **covered property** to the original location it had been removed from once the danger by a **peril insured against** has ended.

    b.  When **covered property** has been removed for this reason, it will be insured against loss or damage from a **peril insured against** at the temporary location according to the following terms:

        **(1)** For up to ninety (90) days at each place to which the property has been taken for preservation;

        **(2)** The applicable **limit of liability** will apply to each temporary location on a pro rata basis, based on the value **your covered property** stored at that location bears to the total value of **covered property** originally insured at the location under imminent threat.

The sublimits of liability, rewards or other amounts payable under these standard extensions of coverage do not increase and are not in addition to any other applicable **limit of liability.**

**B.**  Optional Extensions of Coverage

These extensions of coverage apply only if the applicable sublimit of liability is shown in **E.** Optional Extensions of Coverage – Sublimits of Liability of the DECLARATIONS, Form RM1000.

    1.  Course of Construction

        a.  We will pay for direct physical loss or damage to **real property** of the type insured by this policy, including new additions and buildings at an existing **covered location,** that **you** begin to construct during the **policy period.**

           **(1)** This coverage only applies for sixty (60) days from the date **you** begin construction.

## EXTENSIONS OF COVERAGE (Continued)

**(2)** To continue this coverage beyond the sixty (60) days, **you** must:

    **(a)** Report newly constructed **real property** to **us** prior to the end of that sixty (60) day period; and

    **(b)** Pay premium from the date **you** begin construction.

**b.** **We** will also pay under this extension of coverage for materials, supplies, machinery, equipment and fixtures, including those that are **personal property of others**, which are:

    **(1)** Intended by **you** for use in construction; and

    **(2)** Located on the construction site awaiting use in construction.

**c.** This coverage only applies to the construction of **real property you** intend to own or occupy once constructed.

**2.** Errors and Omissions

If a **covered loss** is not payable under this policy solely because of an error or unintentional omission made by **you**:

**a.** In the description of where **covered property** is physically located;

**b.** To include any location:

    **(1)** owned, rented or leased by **you** on the **effective date** of this policy; or

    **(2)** purchased, rented or leased by **you** during the term of the policy; or

**c.** That results in cancellation of the property insured under this policy, except for cancellation due to nonpayment of premium.

Then **we** will pay the amount **we** would have paid had the error or omission not been made, but not exceeding the **limit of liability** provided for Errors and Omissions shown on the DECLARATIONS, Form RM1000.

This coverage does not apply, however, if coverage is found, in whole or in part, elsewhere in this policy.

**3.** Exhibitions, Expositions, Fairs or Trade Shows

**We** will pay for loss or damage to **your personal property** while at an exhibition, exposition, fair or trade show.

Coverage also applies while **your personal property** is being transported between a **covered location** and the location of the exhibition, exposition, fair or trade show.

**4.** **Miscellaneous Locations**

**Miscellaneous locations** are insured for coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement.

**5.** **New Locations**

**a.** **New locations** are insured for coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement for the period of time specified in **E. 4. h.** of the DECLARATIONS, Form RM1000.

## EXTENSIONS OF COVERAGE (Continued)

    **b.** .To continue this coverage beyond the time frame specified, **you** must:

        **(1)** Report **new locations** to **us** prior to the end of the period specified on the DECLARATIONS, Form RM1000; and

        **(2)** Pay premium from the date **you** purchase or rent these **new locations**.

**6.** Demolition Cost, Increased Construction Cost and Operation of Building Laws

    **a.** In the event of a **covered loss**, **we** will pay:

        **(1)** Demolition Cost

            The cost incurred to demolish all or part of **your covered real property**, including the cost to clear the site, if any law or ordinance that exists at the time of loss requires such demolition.

        **(2)** Increased Construction Cost

            The increased cost **you** incur for materials and labor required to rebuild the damaged portion of **your real property** at the same location and in a manner that satisfies the minimum requirements of the applicable law or ordinance existing at the time of the loss.

        **(3)** Operation of Building Laws

            The cost **you** incur to rebuild at the same location any undamaged part of **your real property** that is required by law to be demolished after a **covered loss**, excluding any costs associated with demolition. **We** will only pay the costs to satisfy the minimum requirements of the applicable law or ordinance that exists at the time of the loss.

    **b.** **We** will not pay for any of these costs:

        **(1)** Unless they are incurred within two (2) years from the date of loss.

        **(2)** If they are incurred due to any law or ordinance that:

            **(a)** **You** were required to comply with before the loss, even if the building was undamaged; and

            **(b)** **You** failed to comply with.

        **(3)** If they are associated with any demolition, abatement, removal, cleanup, debris removal, repair, monitoring or testing, increased cost of repair or other cost resulting from enforcement of any such law or ordinance which relates to **pollution, fungus**, bacteria, wet or dry rot, or decay.

**7.** Salespeople

    **a.** **Your** covered **personal property** in the custody of salespeople.

    **b.** Coverage does not apply to loss or damage by theft from the salespersons vehicle unless:

        **(1)** The vehicle is equipped with a fully enclosed body or compartment;

        **(2)** The doors, windows and hatches were securely locked; and

## EXTENSIONS OF COVERAGE (Continued)

(3)  There are visible signs of forced entry to the vehicle

at the time of loss.

8.  **Transit**

**Your** covered **personal property** while in **transit.**

This extension of coverage also applies to **personal property of others** while in **transit** at **your** risk, but does not apply if **you** are acting as a common or contract carrier.

9.  **Unscheduled Locations**

**Unscheduled locations** are insured for coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement.

The sublimits of liability or amounts payable under these optional extensions of coverage do not increase and are not in addition to any other applicable **limit of liability.**

# EXCLUSIONS

**A.  GROUP A EXCLUSIONS**

**We** will not pay for loss or damage caused by or resulting from any of the following, regardless of any other cause or event, including a **peril insured against,** that contributes to the loss at the same time or in any other sequence:

**1.**  Loss attributable to:

   **a.**  War, including undeclared or civil war; or

   **b.**  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **c.**  Insurrection, rebellion, revolution, usurped power, including action taken by a governmental authority in hindering or defending against any of these

   whether or not involving the use of any chemical, biological or nuclear substance.

**2.**  **Earth movement,** whether sudden or gradual.

   **a.**  If a loss to **covered property** by fire, theft, or explosion ensues, **we** will pay for that loss.

   **b.**  This exclusion does not apply to **covered property in transit.**

   **c.**  This exclusion does not apply to **sinkhole collapse** or **volcanic activity.**

**3.**  **Flood.**

   **a.**  If a loss to **covered property** by fire, theft, or explosion ensues, **we** will pay for that loss.

   **b.**  This exclusion does not apply to **covered property in transit.**

**4.**  **Fungus,** bacteria, wet or dry rot, decay.

   If a loss to **covered property** from a **specified peril** ensues, **we** will pay for that loss.

**5.**  **Pollution.**

**6.**  Demolition cost, operation of building laws and increased cost of construction including the enforcement of any ordinance or law regulating the use, construction, repair or demolition of buildings or structures.

**7.**  Seizure or destruction of **covered property** by government order.

   **We** will pay for loss to **covered property** resulting from acts of destruction ordered by government to prevent the spread of fire.

**8.**  Nuclear reaction or nuclear radiation, or radioactive contamination.

   If a loss to **covered property** by fire ensues, **we** will pay for that loss unless otherwise limited or excluded elsewhere in this policy, including any limits or exclusions applicable to terrorism.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

# EXCLUSIONS (Continued)

9.  Interference with or interruption of any public or private utility or any entity providing electrical, heating, air conditioning, refrigeration, telecommunication, steam, water, sewer or fuel service or any other service, if the failure occurs away from the **covered location**.

    If a **covered loss** ensues, **we** will pay for that loss.

10. The actual or suspected presence or threat of any virus, organism or like substance that is capable of inducing disease, illness, physical distress or death, whether infectious or otherwise, including but not limited to any epidemic, pandemic, influenza, plague, SARS or Avian Flu.

11. Except as shown in **A. 3.** Standard Extensions of Coverage of EXTENSIONS OF COVERAGE, Form RM1002, loss attributable to:

    a.  The introduction of a malicious code, program, virus, worm, Trojan Horse program, macro time or logic bomb or similar unauthorized instruction which is designed or intended to damage, corrupt, destroy, distort, or delete any part of the system or disrupt its normal operation, into any of the following, whether owned by **you** or others:

        **(1) Data processing equipment, software, data, or media;**

        **(2)** Information repository;

        **(3)** Hardware or **software** based computer operating systems;

        **(4)** Microprocessors;

        **(5)** Integrated circuits;

        **(6)** Computer networks;

        **(7)** Website service; or

        **(8)** Any other electronic equipment, computerized equipment, or similar device.

    b.  Programming, operation or operator error of any of the items described in **11. a. (1) - (8).**

    c.  Incompatibility, or the inability to properly interface between any of the items described in **11. a. (1) - (8).**

    d.  A change in the functionality, availability, operation, use of, accessibility to or operation of any of the items described in **11. a. (1) - (8).**

    e.  Inability, failure or malfunction of the items as described in **11. a. (1) - (8)** or any services, functions, or products that use or rely upon in any manner one (1) or more of the items as described in **11. a. (1) - (8)** to correctly recognize, distinguish, interpret, process, provide or accept **data** or one (1) or more dates or times.

    f.  Advice, consultation, evaluation, design, inspection, installation, repair, replacement or maintenance done by **you** or for **you** to determine or correct any conditions or problems described by in **11. a. - e.**

    If loss to **covered property** by any of the following perils ensues, **we** will pay for that loss;

    a.  Fire;

    b.  Explosion; or

    c.  Leakage or accidental discharge from automatic fire protection system.

    However, **we** will not pay for modification, repair or replacement of systems or devices described in **11. a. (1) - (8)** in order to correct any potential or actual deficiencies or to change any features.

## EXCLUSIONS (Continued)

**B.** **GROUP B EXCLUSIONS**

**We** will not pay for loss or damage caused by or resulting from any of the following:

1. Unexplained or mysterious disappearance of any property.

2. Shortage of property discovered on taking inventory.

3. Theft by employees, whether acting alone or with others.

4. Any criminal, fraudulent or dishonest acts committed alone or in collusion with others:

   a. By **you**;

   b. By any of **your** associates, proprietors, partners, directors, trustees, officers, agents, employees or representatives; or

   c. By any person or entity to whom **you** or any of **your** associates, proprietors, partners, directors, trustees, officers, agents, employees or representatives voluntarily relinquishes possession of **covered property** with or without **your** authority.

   However, acts of destruction, including vandalism, by employees to **covered property** shall not be subject to this exclusion.

5. Manufacturing or processing operations, which result in damage to stock or materials while the stock or materials are being processed, manufactured, worked on or tested.

   If a **covered loss** ensues, **we** will pay for that loss.

6. Delay, loss of market, loss of use, indirect or remote loss or damage.

7. Loss attributable to:

   a. Wear and tear, deterioration, depletion, erosion, rust, corrosion;

   b. Inherent vice, latent defect, or any quality in the **covered property** that causes it to damage or destroy itself;

   c. Smog, acid rain, agricultural smudging;

   d. Smoke, fumes, gas or vapor that result from industrial operations;

   e. Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings, retaining walls or outdoor swimming pools;

   f. Animals, birds, vermin, rodents or insects;

   g. Change or extremes in temperature or humidity, whether atmospheric or not, except damage to equipment; or

   h. Contamination, shrinkage, change in taste, texture, finish or color.

   If a **covered loss** ensues, **we** will pay for that loss.

8. Failure or breakdown of machinery or equipment, including rupture or bursting caused by centrifugal force.

   If a **covered loss** ensues, **we** will pay for that loss.

   This exclusion will not apply to physical loss to **data, data processing equipment or software**.

## EXCLUSIONS (Continued)

9. Explosion of the following:

    a.  Steam boilers;

    b.  Steam turbines, steam engines, steam piping, electric steam generators; or

    c.  Gas turbines.

    If a loss to **covered property** by fire or explosion ensues, **we** will pay for that loss.

10. Rupture, bursting, cracking, burning or bulging of the following:

    a.  Steam boilers;

    b.  Steam turbines, steam engines, steam piping, electric steam generators;

    c.  Hot water boilers or other equipment for heating water;

    d.  Pressure vessels; or

    e.  Gas turbines.

    If a loss to **covered property** by fire or explosion ensues, **we** will pay for that loss.

11. Any electrical injury or disturbance to electrical appliances, devices, fixtures, wiring or other electrical or electronic equipment caused by electrical currents artificially generated.

    If a fire or an explosion loss ensues, **we** will pay for that loss.

    This exclusion will not apply to physical loss to:

    a.  **Data** or **software** caused by injury, disturbance, or erasure resulting from electricity or magnetic fields; or

    b.  **Data processing equipment** caused by short circuit, blowout, or other electrical damage.

12. Loss attributable to faulty, defective or inadequate:

    a.  Construction, workmanship or material;

    b.  Maintenance;

    c.  Design, plan or specification;

    d.  Developing, surveying or siting of buildings or structures during the course of construction or alterations.

    If a **covered loss** ensues, **we** will pay for that loss.

13. Loss or damage to bulkheads, piers, wharves, docks, seawalls or jetties from freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water whether driven by **wind** or not.

14. Acts or decisions, including the failure to act or decide, of any governmental employee, agent, group, organization, agency or body.

    If a **covered loss** ensues, **we** will pay for that loss.

# PROPERTY NOT COVERED

**We** do not cover loss to:

**A.**  Aircraft;

**B.**  Animals;

**C.**  Bridges or tunnels, however pedestrian walkways connecting buildings are covered;

**D.**  Caves, caverns, mines of any type, or any property contained within them;

**E.**  Contraband or property in the course of illegal transportation or trade;

**F.**  Currency, money, securities and negotiable instruments of any kind;

**G.**  Dams, dikes, levees;

**H.**  Furs, jewelry;

**I.**  Locomotives, including rolling stock;

**J.**  **Mobile equipment or tools,** when more than one-thousand (1,000) feet away from a **covered location;**

**K.**  Precious metal, except when used in industrial or service operations;

**L.**  Precious stones, except when used in industrial or service operations;

**M.**  Property insured under import or export ocean cargo policies;

**N.**  Property **you** transport as a common or contract carrier;

**O.**  Property shipped by mail, unless sent registered or certified;

**P.**  Vehicles, licensed for highway use, when more than one-thousand (1,000) feet away from a covered location. If **your** vehicles, licensed for highway use, are covered for physical damage by other insurance, **you** agree that such other insurance is considered **your** primary coverage for any loss or damage that occurs;

**Q.**  Water, land, including land on which **covered property** is located, lawns, growing crops, or standing timber;

**R.**  Watercraft, except watercraft that is part of **your** inventory while being stored un-fueled and on dry land at a **covered location.**

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

# VALUATIONS

## A. Replacement Cost

1. Loss or damage to **covered property** will be valued at the time and place of the loss at **replacement cost** unless otherwise indicated in **B.** and **C.** below or by other forms or endorsements attached to this policy.

2. **We** will not pay **replacement cost** until the lost or damaged property is actually repaired or replaced. If repairs or replacement are not made within two (2) years after the date of the physical loss **we** will pay only the **actual cash value** amount.

   a. **Our** obligations for **replacement cost** will be the smaller of:

      (1) The cost to repair the damaged property; or

      (2) The cost to replace or rebuild with new materials of like size, kind and quality; or

      (3) The selling price of **your real property** or **personal property**, other than stock, that is offered for sale, less all saved expenses; or

      (4) The amount of **your** legal liability to the owner of **personal property of others**; or

      (5) The applicable **limit of liability**.

   b. **We** will not pay for any increase in cost due to **your** failure to use reasonable speed to repair, rebuild or replace the damaged property.

   c. If the replacement occurs at another location, **we** will not pay for the cost of land at either the original or the **new location**.

3. If **you** elect not to rebuild **your real property** after a covered loss, **you** may still make claim for the **covered loss** to **your real property** at **replacement cost**, excluding any amounts for demolition or increased cost of construction, provided;

   a. **you** actually spend those funds on capital expenditures to improve **real property** at covered **locations** within the policy territory;

   b. those capital expenditures were not planned as of the date of loss; and

   c. **you** make claim for the expenditure of these funds within two (2) years of the date of loss.

4. If an **object** requires replacement due to an **accident**, **we** will pay **your** additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

   However, **we** will not pay more than one-hundred twenty-five (125) percent of what the cost would have been to repair or replace the **object(s)** with like kind and quality.

   This does not apply to any property subject to valuation based on **actual cash value**, nor does this provision increase any other applicable **limit of liability**.

   The **period of restoration** will not be increased by any of the above.

## B. Actual Cash Value

Loss or damage to these types of **covered property** will be valued at **actual cash value** at the time and place of loss:

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

# VALUATIONS (Continued)

    a.  Manuscripts;

    b.  **Mobile equipment or tools**; and

    c.  Vehicles licensed for highway use.

C.  Other Valuations

Loss or damage to these types of **covered property** will be valued at the time and place of loss as follows:

1.  Exposed film

    The value of unexposed film of the same type and quality.

2.  **Fine Arts**

    a.  The lesser of the:

        (1)  Reasonable or necessary restoration or repair costs needed to return the damaged article(s) to its condition as of the time of loss;

        (2)  Cost to replace the damaged article;

        (3)  Value specified for an article(s) if shown on a schedule of **fine arts** on file with **us**, or

        (4)  Value specified for an article(s) if shown on the schedule of any form or endorsement attached to this policy.

    b.  In the event of the total loss of an article or articles which are a part of a pair or set, **we** will pay **you** the full amount of the value of such set as determined in **C. 2. a.** above and **you** will surrender the remaining article or articles of the set to **us**.

3.  Finished goods manufactured by **you**

    The regular cash selling price at the location where the loss happens, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

4.  **Media, data**, programs or any **software** stored on electronic, electromechanical, electromagnetic **data processing equipment** or production equipment.

    The cost of transferring such from backup or from originals of a previous generation. **We** will not pay for any other cost, including research, engineering or other cost of restoring or recreating lost information.

5.  Stock in process

    The value of raw materials and labor expended plus the proper proportion of overhead charges.

6.  **Valuable papers and records**

    The value blank, plus the cost of copying from backup or from originals of a previous generation. **We** will not pay for any other cost, including research, engineering or other cost, of restoring or recreating lost information.

# CONDITIONS

**A.** Abandonment of Property

**You** may not abandon property to **us**.

**B.** Appraisal

1. If **you** fail to agree with **us** on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after **our** receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within thirty (30) days of the written demand for appraisal.

2. The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition a judge of a court of record in the state where the **covered loss** happened, to select an umpire.

3. The appraisers will then set the amount of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will set the amount of loss or damage.

4. Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

**C.** Assignment

**Your** assignment of this policy will not be valid except with **our** written consent.

**D.** Brands and Labels

In the event of a **covered loss** to branded or labeled merchandise, **we** may choose to take title to all or any part of that merchandise, at the value established by the terms of this policy. **You** may, at **your** expense:

1. Stamp "salvage" on the merchandise or its containers; or

2. Remove or obliterate the brands or labels if such removal or obliteration will not physically damage the merchandise. **You** must re-label the merchandise or containers in compliance with the requirements of law.

**E.** Breach of Condition

A breach of any condition of this policy at any **covered location** will not affect coverage at any other **covered location** where, at the time of loss or damage, no breach exists.

**F.** Cancellation

1. **You** may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.

2. If this policy has been in effect for less than sixty (60) days and is not a renewal of a policy **we** issued, **we** may cancel this policy for any reason by giving **you** written notice of cancellation at least:

    a. Ten (10) days before the date of cancellation if **we** cancel for nonpayment of premium; or

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

## CONDITIONS (Continued)

    **b.** Sixty (60) days before the date of cancellation if **we** cancel for any other reason.

3. If this policy has been in effect for sixty (60) days or more or is a renewal of a policy **we** issued, **we** may cancel this policy by giving **you** written notice of cancellation at least:

    **a.** Ten (10) days before the date of cancellation if **we** cancel for one (1) or more of the following reasons:

        **(1)** Nonpayment of premium;

        **(2)** Conviction of a crime arising out of acts increasing the likelihood of a **covered loss;**

        **(3)** Discovery of fraud or material misrepresentation by **you** in obtaining this policy or in pursuing a claim under this policy;

        **(4)** Discovery of any willful or reckless act or omission by **you** increasing the likelihood of a **covered loss;** or

        **(5)** A determination by the Commissioner of Insurance that continuation of the policy would violate or place **us** in violation of the law.

    **b.** Sixty (60) days before the date of cancellation if **we** cancel for one (1) or more of the following reasons:

        **(1)** Physical changes in the property, which increase the likelihood of a **covered loss;**

        **(2)** A material increase in the likelihood of a **covered loss;** or

        **(3)** Loss or decrease of **our** reinsurance covering the insurance provided by this policy.

4. If **we** cancel for nonpayment of premium, **you** may continue the coverage and avoid cancellation by making full payment any time prior to the date of cancellation.

5. Notice of Cancellation will be delivered or sent by;

    **a.** Registered mail;

    **b.** Certified mail; or

    **c.** First-Class mail.

    **We** will mail or deliver the notice to **your** last mailing address known to **us.**

6. Notice of cancellation will state the reason for cancellation, and the effective date of cancellation. The **policy period** will end on that date.

7. If this policy is canceled, **we** will send to **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund will be 90% of pro rata. The cancellation will be effective even if **we** have not yet made or offered a refund.

8. If notice is mailed, proof of mailing will be sufficient evidence of notice.

**G.** Change of Terms

    The terms of this insurance will not be waived, changed, or modified except by written endorsement issued by **us** and which becomes a part of this policy.

## CONDITIONS (Continued)

**H.** Collection from Others

Payment to **you** for a **covered loss** will be reduced to the extent **you** have collected that loss from others.

**I.** Concealment, Misrepresentation or Fraud

This entire policy is void, if with the actual intent to deceive

1. **You**;

2. **Your** representatives; or

3. any insured;

commit fraud or conceal or misrepresent a fact or circumstance concerning

1. This policy;

2. The **covered property**;

3. **Your** interest in the **covered property**; or

4. A claim under this policy.

**J.** Inspection

1. During the period of this policy, **we** will be permitted, but not obligated, to inspect the **covered property**. Neither **our** right to make inspections, nor making them, nor any report of them, will imply for **you** or others, nor constitute an undertaking, that the **covered property** is safe, healthful, or in compliance with laws, regulations, codes or standards.

2. This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

   **We** will have no liability to **you** or others because of any inspection or failure to inspect.

**K.** Liberalization

If, during the **policy period** or forty-five (45) days prior to the **policy period**, a filing of **ours** to a state insurance department would broaden this insurance without requiring any additional premium, then the terms and coverage of that filing will apply to **covered locations** and **covered property** within that state, effective on the dates specified within the filing.

**L.** Loss Payee

In the event of a **covered loss** to property in which both **you** and a loss payee shown on the SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES, Form RM1102, have an insurable interest, **we** will:

1. Adjust the **covered loss** with **you**; and

2. Make payment for the **covered loss** to **you** and the loss payee jointly, as their interests may appear.

## CONDITIONS (Continued)

**M.** Mortgage Holders

   **1.**  We will pay for **covered loss** to buildings or structures to each mortgage holder shown on the SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES, Form RM1102, as their interests may appear.

   **2.**  A mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

   **3.**  If we deny **your** claim because of **your** acts or because **you** have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment, up to the amount of their insurable interest, but in no event more than the applicable **limit of liability**, if the mortgage holder:

      **a.**  Pays any premium due under this policy at **our** request;

      **b.**  Submits a signed, sworn proof of loss within sixty (60) days after receiving notice from **us** of **your** failure to do so; and

      **c.**  Has notified **us** of any change in ownership, occupancy, or substantial change in risk known to the mortgage holder.

    All terms and conditions of this policy will then apply directly to the mortgage holder.

   **4.**  If **we** pay the mortgage holder for any **covered loss** and deny payment to **you** because **you** have failed to comply with the terms of this policy:

      **a.**  The mortgage holder's rights under the mortgage will be transferred to **us** to the extent of the amount **we** pay; and

      **b.**  The mortgage holder's right to recover the full amount of the mortgage claim will not be impaired.

    In the event of a **covered loss**, **we** will, at **our** option, pay the mortgage holder the whole principal of **your** mortgage plus any accrued interest. In that event, **your** mortgage and note will be transferred to **us**, and **you** will pay **your** remaining mortgage debt to **us**.

   **5.**  If **we** cancel or nonrenew this policy, **we** will give the mortgage holder the same notice **we** give to **you**.

   **6.**  The term "mortgage holder" includes trustee.

**N.** No Benefit to Bailee

   No person or organization, having custody of **your covered property**, will benefit from this policy.

**O.** No Reduction by Loss

   Except for those coverages written with an annual aggregate **limit of liability** or sublimits of liability, **we** will pay for a **covered loss** without reducing any other applicable **limit of liability** or sublimits of liability.

**P.** Nonrenewal

   **1.**  If **we** decide not to renew this policy, **we** will mail or deliver a written notice of nonrenewal to **you** at least sixty (60) days before the expiration date of this policy. Notice will be sent to **your** last mailing address known to **us**. **We** will state the reason for nonrenewal.

# CONDITIONS (Continued)

2.  This notice will be delivered or sent by:

    a.  Registered mail;

    b.  Certified mail; or

    c.  First-Class mail.

3.  If notice is mailed, proof of mailing will be sufficient evidence of notice.

Q.  Other Insurance

1.  If there is any other insurance that would apply in the absence of this policy, **we** will pay for a **covered loss** only after the limits of all other applicable insurance are exhausted.

2.  If this policy is deemed by law to contribute to a loss with other insurance, **we** will pay only **our** proportionate share of the loss, up to the applicable **limit of liability**. **Our** share will be the proportion that the applicable **limit of liability** of this policy bears to the total applicable **limits of liability** available from all insurance.

3.. **You** are permitted to have other insurance over any limits or sublimits of liability specified in this policy.

4.  The existence of such insurance will not reduce any limit or sublimit of liability in this policy.

5.  To the extent this policy replaces another policy, coverage under this policy shall not become effective until such other policy has terminated.

R.  **Our** Options

At **our** option, **we** will repair, rebuild or replace damaged **covered property** with other property of like kind and quality within a reasonable period of time. If **we** elect to repair or replace the **covered property**, **we** will notify **you** of that decision within sixty (60) days of **our** receipt of **your** proof of loss. **We** will, at **our** option, take title to all or any part of the damaged or destroyed property at the agreed or appraised value.

S.  Pair, Set or Parts

In the event of a **covered loss** to an article that is part of a pair or set, **our** payment for that loss will be:

1.  The cost to repair or replace any part to restore the pair or set to its value before the **covered loss**; or

2.  The difference between the value of the pair or set before and after the **covered loss**.

In no event will the loss of part of a pair or set be regarded as a total loss of the pair or set.

When **covered property** consists of several parts, **we** will pay only for the lost or damaged part.

T.  Payment of Loss

**We** will pay the **covered loss** within thirty (30) days after **we** receive and accept the signed, sworn Proof of Loss, if:

1.  **You** have complied with all the terms of this policy;

# CONDITIONS (Continued)

2.  We have reached agreement with **you** on the amount of **covered loss,** or

3.  An appraisal award is made as provided for in Condition **B.** Appraisal.

U.  **Policy Period** and Territory

We will only pay for direct physical loss or damage to **covered property** of the type insured by this policy as the result of a **peril insured against** during the **policy period** shown on the DECLARATIONS, Form RM1000, while the **covered property** is:

1.  Within the continental United States of America, Hawaii and Puerto Rico;

2.  Being moved on land or in the air within or between the continental United States of America and Canada; or moved on land or in the air within Hawaii or Puerto Rico; or

3.  Being moved on inland waters and intercoastal waterways of the continental United States of America, or on any of the Great Lakes.

V.  Recovered Property

1.  If either **you** or **we** recover any **covered property** after **we** have paid for its loss, that party must give the other prompt written notice of the recovery.

2.  If **we** recover the **covered property, we** will return it to **you,** if **you** so request. **You** must then return the amount we paid to **you** for it.

3.  If **you** recover the **covered property, you** may either keep it or surrender it to **us.** If **you** choose to keep it, **you** must return the amount **we** paid to **you** for it.

W.  Right to Adjust with Owner

1.  **Covered losses** will be adjusted with **you** except as provided in Condition **M.** Mortgage Holders.

2.  If a claim is made for damage to **covered property** of others, **we** will have the right to adjust that loss or damage with the owners of that property. **Our** payment to the owners will fully satisfy any claim of **yours** for damage to that property.

X.  Subrogation

1.  If **we** make payment for a loss, **you** will assign to **us** all **your** rights of recovery against any party for that loss. **We** will not acquire any rights of recovery **you** have waived prior to the loss. **You** agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss has occurred.

2.  **You** will be paid any recovery, in the proportion that **your** deductible and any provable uninsured loss bears to the total loss less **your** proportion of fees and expenses.

Y.  Suit

No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the policy terms and conditions. Any suit against **us** must be brought within two (2) years after the date on which the direct physical loss or damage occurred, or the shortest time permitted by law, whichever is greater.

## CONDITIONS (Continued)

**Z.**   Suspension

If Equipment Breakdown is marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and **we** discover a dangerous condition relating to an **object, we** may immediately suspend the insurance provided by this coverage for that covered equipment by written notice mailed or delivered to **you** either at **your** address or at the location of any **object.** Suspended insurance may be reinstated by **us,** but only by an endorsement issued as part of this policy. **You** will be credited for the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension. The suspension will be effective even if **we** have not yet made or offered a refund.

**A.A.**   Titles of Paragraphs

The titles of the paragraphs of this policy and of any endorsements attached to it are only for reference. They do not affect the terms to which they relate.

**B.B.**   Vacancy

1.   If any of **your real property:**

   **a.**   is vacant at the inception of this policy; or

   **b.**   becomes vacant, and remains vacant for more than sixty (60) consecutive days, during the **policy period;**

   it is a requirement of this policy that **you:**

   **(1)**   Notify **us** in writing of the vacancy prior to loss or damage; and

   **(2)**   Maintain in complete working order the protective safeguards present prior to the vacancy. Protective safeguards include, but are not limited to:

      **(a)**   Automatic sprinkler systems;

      **(b)**   Fire alarm systems;

      **(c)**   Guard or watchman services;

      **(d)**   Burglary systems; and

      **(e)**   Monitoring systems.

2.   If the above requirements are not met, then in addition to the other terms, conditions, limitations and exclusions in this policy, **we** will:

   **a.**   Not pay for any loss or damage caused by or resulting from any of the following:

      **(1)**   Breakage of building glass;

      **(2)**   **Fungus** (including **fungus** cleanup);

      **(3)**   Sprinkler leakage, unless the system has been protected against freezing;

      **(4)**   Theft or attempted theft;

      **(5)**   Vandalism;

## CONDITIONS (Continued)

(6)  Malicious mischief; or

(7)  Water damage.

**b.**  Value the loss or damage for the vacant **real property** (including any loss or damage to **personal property**) at the time of loss at the smaller of:

(1)  The **actual cash value**;

(2)  The actual cost to repair; or

(3)  The selling price, less all saved expenses, if it was being offered or listed for sale at the time of loss.

**3.**  **Real property** is considered vacant unless at least thirty (30) percent of the square footage is:

**a.**  Being used by **you** to conduct **your** customary operations; or

**b.**  Rented by **you** to a tenant or sub-tenant and is being used by them to conduct their customary operations.

**4.**  **Real property** is not considered vacant during its ongoing construction or renovation.

**C.C.**  **Your** Duties After a Loss

In case of loss **you** will:

**1.**  Give **us** immediate written notice of the loss;

**2.**  Give notice of such loss to the proper authorities if the loss may be due to a violation of the law;

**3.**  As soon as possible, give **us** a description of the property involved and how, when and where the loss happened;

**4.**  Take all reasonable steps to protect the **covered property** from further damage;

**5.**  Promptly separate the damaged property from the undamaged property, and keep it in the best possible order for examination;

**6.**  Furnish a complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed under the valuation provision of the policy;

**7.**  Keep an accurate record of all repair costs;

**8.**  Keep all bills, receipts and related documents that establish the amount of loss;

**9.**  As often as may reasonably be required:

**a.**  Permit **us** to inspect the damaged property and take samples for inspection, testing and analysis.

**b.**  Produce for inspection and copying, all of **your** books of account, business records, bills and invoices.

**c.**  Permit **us** to question, under oath, **you** and any of **your** agents, employees, or representatives involved in the purchase of this insurance or the preparation of **your** claim, including any public adjusters and any of their agents, employees or representatives, and verify **your** answers with a signed acknowledgment.

## CONDITIONS (Continued)

10. Submit to **us**, within ninety (90) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

    a. The time and cause of the loss;

    b. **Your** interest and the interest of all others in the property involved;

    c. Any other policies of insurance that may provide coverage for the loss;

    d. Any changes in title or occupancy of the property during the **policy period**; and

    e. The amount of **your** claimed loss.

    **You** shall also submit with the Proof of Loss:

    a. The inventory referred to in **C.C. 6.**;

    b. The records specified in **C.C. 7.** and **C.C. 8.**;

    c. Specifications for any damaged building; and

    d. Detailed estimates and invoices for the repair of any damage.

11. Cooperate with **us** in the investigation and adjustment of the loss.

# DEFINITIONS

**A.**  **Accident** means a sudden, fortuitous event that causes direct physical damage to an **object(s)**, which requires that the **object(s)** be repaired or replaced, in whole or in part.

**Accident**, however, does not include any of the following:

**1.**  Fire, including water or other means used to extinguish the fire;

**2.**  Combustion explosion.  This includes but is not limited to, a combustion explosion of any steam boiler or other fired vessel;

**3.**  Discharge of molten material from equipment including the heat from such discharged material;

**4.**  Depletion, deterioration, rust, corrosion, erosion, settling or wear and tear or any other gradually developing condition;

**5.**  Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance;

**6.**  Lightning;

**7.**  Any loss or damage caused by or resulting from any type of electrical or electronic insulation breakdown test; or

**8.**  Any loss or damage caused by or resulting from any type of hydrostatic, pneumatic or gas pressure test.

**B.**  **Actual cash value** means **replacement cost** less deduction for depreciation.

**C.**  **Average daily value (ADV)** means **your business income** that would have been earned during the **period of restoration** had no loss happened, divided by the number of operating days in that period.

The **average daily value (ADV)** applies to the **business income** value of the entire **covered location** whether or not the loss effects the entire **covered location**.  If more than one (1) **covered location** is included in the valuation of the loss, the **average daily value (ADV)** will be the combined value of all **covered locations.**

**D.**  **Business income** means:

Gross earnings, including rental income, plus all other earnings derived from the operation of the business, less all charges and expenses which do not necessarily continue.

For example:

**1.**  Manufacturing operations:

The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production.

**2.**  Mercantile or nonmanufacturing operations:

The net sales less the cost of merchandise sold and materials and supplies consumed in the operations or services rendered by **you.**

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

# DEFINITIONS (Continued)

3.  Property rental operations:

    The total expected gross rental income from tenant occupancy of **your covered location(s)**. This also includes all charges which are the legal obligation of **your** tenants, which would otherwise be **your** obligations, and the fair rental value of any portion of **your covered location(s)** which **you** occupy.

E.  **Covered location(s)** means those locations shown on the Schedule of the DECLARATIONS, Form RM1000, or on the Schedule of any endorsement to this policy.

F.  **Covered loss** means a loss to **covered property** at a **covered location** resulting from a **peril insured against.**

G.  **Covered property** means property insured by this policy.

H.  **Data** means any information recorded on **media** and used in **your** processing operations.

I.  **Data processing equipment** means processing units, terminals, tape drives, disk drives, controllers, printers, and other equipment capable of receiving, processing, storing or retrieving information.

J.  **Earth movement**, whether natural or man-made, includes but is not limited to:

    1.  Earthquake;

    2.  Landslide;

    3.  Mudflow or mudslide; or

    4.  Sinking, rising or shifting of the earth.

K.  **Effective date** means the day and time at which the insurance provided by this policy begins.

L.  **Extra expense** means the reasonable and necessary extra costs:

    1.  Incurred to temporarily continue as nearly normal as practicable the conduct of **your** business; or

    2.  Of temporarily using property or facilities of **yours** or others.

    3.  For purposes of applying the above provision "normal" means the condition that would have existed had no **covered loss** happened.

M.  **Fine arts** means property of rarity, antiquity, or artistic merit, including but not limited to paintings; etchings; pictures (including their negatives); tapestries; statuary; marbles; bronzes; antique jewelry; antique furniture; antique silver; rare books; porcelains; rare or art glassware; art glass windows; valuable rugs; bric-a-brac and porcelains.

N.  **First tier wind Counties and Parishes** means the Counties and Parishes in the States as follows:

    Baldwin and Mobile Counties in the State of Alabama;

    All Counties in the State of Florida;

    Bryan, Camden, Chatham, Glynn, Liberty and McIntosh Counties in the State of Georgia;

## DEFINITIONS (Continued)

The Hawaiian Islands;

Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St Bernard, St Mary, St Tammany, Terrebonne and Vermilion Parishes in the State of Louisiana;

Hancock, Harrison, and Jackson Counties in the State of Mississippi;

Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Currituck, Dare, Hyde, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington Counties in the State of North Carolina;

Beaufort, Charleston, Colleton, Georgetown, Horry and Jasper Counties in the State of South Carolina;

Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Refugio, San Patricio and Willacy Counties in the State of Texas; and

The Commonwealth of Puerto Rico.

O.  **Flood** means:

1.  The release of water from, or the rising, overflowing, or breaking of boundaries of rivers, lakes, streams, ponds, or other natural or man-made bodies of water; or

2.  Waves, tides, tidal waves, surface water, rain accumulation or runoff.

**Flood** includes spray from any of them, all whether driven by **wind** or not.

P.  **Fungus** means any of a major group (fungi) of saprophytic and parasitic lower plants that lack chlorophyll and include but are not limited to molds, rusts, mildews, smuts, mushrooms, and yeasts, and any mycotoxins, spores, scents or by-products produced or released by fungi.

Q.  **Hail** means precipitation composed of concentric layers of clear ice and hardened snow in the shape of stones ranging in size from pea to softball or larger.

R.  **Limit(s) of liability** means the maximum amount **we** will pay for a **covered loss**.

S.  **Media** means the medium on which **data** or **software** is stored, such as magnetic tape, perforated paper tape, punch cards, media cards, discs, drums, and other storage devices used in **your data processing equipment**.

T.  **Miscellaneous location(s)** means a location other than:

1.  A **covered location**;

2.  A **new location**;

3.  An **unscheduled location**;

4.  A location where **covered property** is at an exhibition, exposition, fair or trade show; or

5.  A location for which coverage is found, in whole or in part, elsewhere in this policy including any coverage under errors and omissions.

## DEFINITIONS (Continued)

**U. Mobile equipment or tools** means **your** machinery and equipment principally used by **you** or **your** employees away from a **covered location**, including:

1. Tools, whether powered or not; and

2. Machinery and equipment that is attached to a vehicle licensed for highway use.

**Mobile equipment or tools** does not, however, include vehicles licensed for highway use.

**V. Named Storm** means any storm or weather disturbance that is named by the U.S. National Weather Service. All damage resulting from a single **named storm** that occurs within a continuous seventy-two (72) hour period will be considered a single **occurrence**.

**W. New location(s)** means **real property you** purchase or rent, including **personal property** at that location, after the **effective date** of this policy.

**X. New Madrid** means the Counties and Independent Cities in the States as follows:

Clay, Craighead, Crittenden, Cross, Greene, Independence, Jackson, Lawrence, Lee, Mississippi, Monroe, Phillips, Poinsett, Randolph, St Francis, White, and Woodruff Counties in the State of Arkansas;

Alexander, Franklin, Gallatin, Hamilton, Hardin, Jackson, Johnson, Massac, Perry, Pope, Pulaski, Randolph, Saline, Union, and Williamson Counties in the State of Illinois;

Ballard, Calloway, Carlisle, Crittenden, Fulton, Graves, Hickman, Livingston, Lyon, Marshall, and Mccracken Counties in the State of Kentucky;

Desoto, Marshall, Tate, and Tunica Counties in the State of Mississippi

Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Iron, Jefferson, Madison, Mississippi, New Madrid, Perry, Pemiscot, Reynolds, Ripley, St Charles, St Francois, St Louis, Ste Genevieve, Scott, Stoddard, and Wayne Counties and the Independent City of St. Louis in the State of Missouri;

Crockett, Dyer, Fayett, Gibson, Hardeman, Haywood, Henry, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, and Weakley Counties in the State of Tennessee.

**Y. Object(s)** means the following:

1. Unless specified otherwise in an endorsement to this policy:

   a. Equipment at a **covered location** that generates, transmits or utilizes energy including electronic communications and **data processing equipment**.

   b. Equipment at a **covered location** which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

2. **Object(s)** does not include any of the following:

   a. Structure, including but not limited to the structural portions of buildings and towers, scaffolding, and any air supported structure;

   b. Foundation;

## DEFINITIONS (Continued)

    **c.**  Cabinet, compartment, conduit or ductwork;

    **d.**  Insulating or refractory material;

    **e.**  Buried vessels or piping;

    **f.**  Waste, drainage or sewer piping;

    **g.**  Piping, valves or fittings forming a part of a sprinkler or fire suppression system;

    **h.**  Water piping that is not part of a closed loop used to conduct heat or cooling from a boiler of refrigeration or air conditioning system;

    **i.**  Vehicle or any equipment mounted on a vehicle;

    **j.**  Satellite, spacecraft, or any equipment mounted on a satellite or spacecraft;

    **k.**  Dragline, excavation or construction equipment;

    **l.**  Equipment manufactured by **you** for sale; or

    **m. Data.**

**Z.**    **Occurrence** means all loss or damage attributable directly or indirectly to one (1) cause or series of similar causes. All such loss or damage will be added together, and the total loss or damage will be treated as one (1) **occurrence** irrespective of the amount of time or area over which such loss or damage occurs.

**A.A.**    **Perils insured against** means causes of loss for which this policy provides coverage.

**B.B.**    **Period of restoration** means;

    **1.**  For buildings and equipment, the period of time

        **a.**  starts at the time of a **covered loss** and,

        **b.**  ends when using reasonable speed the building and equipment could be:

            **(1)**  repaired or replaced; and

            **(2)**  made ready for operations;

    under the same or equivalent physical and operating conditions that existed prior to the damage.

    **2.**  For buildings in the course of construction:

        **a.**  We will apply the time period defined in **B.B. 1.** above to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

        **b.**  We will give consideration to the actual experience of the business after completion of the construction and startup.

## DEFINITIONS (Continued)

3.  For stock in-process and mercantile stock, including finished goods not manufactured by **you**, the time required using reasonable speed:

    a.  To restore stock in process to the same state of manufacture which existed at the beginning of the interruption of production or suspension of business operations or services; and

    b.  To replace physically damaged mercantile stock.

4.  For raw materials and supplies, the period of time:

    a.  Of actual interruption of production or suspension of operation or services which results from **your** inability to obtain suitable replacement raw materials and supplies; but

    b.  Limited to that period for which the damaged raw materials and supplies would have satisfied operating needs.

5.  For **valuable papers and records**, the time required using reasonable speed to copy the physically damaged **valuable papers and records** from backup or from originals of a previous generation. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

6.  For **data**, programs, or other **software**, the time required using reasonable speed to restore the physically damaged or destroyed **data**, programs, or other **software** from backup. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

7.  The **period of restoration** does not include any additional time due to **your** inability to resume operations for any other reason, including but not limited to:

    a.  Making changes to equipment.

    b.  Making changes to the buildings, or structures, except as provided in the Demolition Cost, Increased Construction Cost and Operation of Building Laws provision, if a **limit of liability** is shown in **E. 4. b., E. 4. c.** or **E. 4. d.** of the DECLARATIONS, Form RM1000, attached to this policy.

    c.  Restaffing or retraining employees.

    d.  Any law or ordinance that requires testing, monitoring, clean up, removal, decontamination, treatment, detoxification or neutralization of, or any other response to **pollution** or **pollutant(s)**.

8.  The expiration of this policy will not terminate the **period of restoration**. In no event will the **period of restoration** exceed twenty-four (24) months from the date of loss.

C.C.   **Perishable goods** means any **covered property** subject to deterioration or impairment as a result of a change in conditions including but not limited to temperature, humidity or pressure.

D.D.   **Personal property** means **your** tangible things, other than **real property**, including improvements and betterments **you** have made in buildings **you** do not own.

E.E.   **Personal property of others** means tangible things **you** do not own, other than **real property**, that are:

1.  Sold by **you** that **you** agreed, prior to loss, to insure for the account of the purchaser during delivery;

2.  In **your** custody which **you** agreed, prior to loss, to insure; or

## DEFINITIONS (Continued)

3. **In your** care, custody or control, and for which **you** are legally liable, but only to the extent of **your** insurable interest therein.

**F.F.**    **Policy period** means the time during which insurance is provided by this policy.

**G.G.**    **Pollutant(s)** means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, fiber, smoke, vapor, soot, fumes, acids, alkalis, chemicals, biological, organic or bacterial agents and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed. However, **pollutant(s)** does not include ammonia.

**H.H.**    **Pollution** means the presence, discharge, dispersal, seepage, migration, release or escape of any **pollutant(s)**.

**I.I.**    **Puget Sound** means the Counties of Clallam, Island, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston, and Whatcom in the State of Washington.

**J.J.**    **Real property** means buildings and any other structure, including:

1. Completed additions, extensions, permanent fittings or fixtures;

2. Machinery and equipment used to service the buildings;

3. Yard fixtures.

**K.K.**    **Replacement cost** means the cost to replace **covered property:**

1. With new materials of like kind and quality and used for the same purpose; and

2. At the location where the loss happened.

But **replacement cost** excludes any increased cost of repair or reconstruction by reason of any law or ordinance regulating construction, repair or use.

**L.L.**    **Second tier wind Counties and Parishes** means the Counties and Parishes in the States as follows:

Clarke, Covington, Escambia, Geneva, Monroe, and Washington Counties in the State of Alabama;

Brantley, Brooks, Bulloch, Charlton, Effingham, Evans, Long, Tattnall, Thomas, and Wayne Counties in the State of Georgia;

Acadia, Assumption, Calcasieu, Iberville, Jefferson Davis, Lafayette, St Charles, St James, St John the Baptist, St Martin, Tangipahoa and Washington Parishes in the State of Louisiana;

George, Pearl River, and Stone Counties in the State of Mississippi;

Bladen, Columbus, Craven, Duplin, Gates, Halifax, Hertford, Jones, Lenoir, Martin, Northampton, Pitt and Sampson Counties in the State of North Carolina;

Bamberg, Berkeley, Dillon, Dorchester, Hampton, Marion and Williamsburg Counties in the State of South Carolina;

Bee, Brooks, Fort Bend, Goliad, Hardin, Harris, Hidalgo, Jackson, Jim Wells, Liberty, Live Oak, Orange, Victoria, and Wharton Counties in the State of Texas.

**M.M.**    **Sinkhole collapse** means loss to **covered property** resulting from the sudden sinking or collapse of any land into naturally occurring underground empty spaces created by the action of water on limestone or similar rock formations. Coverage for **sinkhole collapse** does not include the cost of filling sinkholes.

## DEFINITIONS (Continued)

**N.N.**    **Software** means programs stored on **media** that instruct **data processing equipment** how to process **data**.

**O.O.**    **Specified perils** means direct physical loss or damage caused by or resulting from:

    **1.**   Fire;

    **2.**   Lightning;

    **3.**   Aircraft;

    **4.**   Explosion;

    **5.**   Riot;

    **6.**   Civil commotion;

    **7.**   Smoke;

    **8.**   Vehicles;

    **9.**   **Wind** or **hail**;

    **10.**  Malicious mischief;

    **11.**  Leakage or accidental discharge from automatic fire protection system;

    **12.**  Collapse.

**P.P.**    **Transit** means the conveyance of **your personal property** within the **policy period** and territory as specified in this policy, from the time it leaves the original point of shipment until it arrives at its intended destination.

This period includes:

    **1.**   While the property is in the care, custody or control of hired carriers; and

    **2.**   Transfers between conveyances.

**Transit** does not include **personal property** while in the custody of **your** salespeople, or while being conveyed between a **covered location** and the location of an exhibition, exposition, fair or trade show.

Should this policy expire or be canceled after the property leaves the original point of shipment but before it arrives at its intended destination, coverage will continue on this **personal property** until it arrives at its intended destination.

**Q.Q.**    **Unscheduled location(s)** means:

    **1.**   **Real property** reported to **us**, but not shown on the Schedule of the DECLARATIONS, Form RM1000, which **you** owned or rented before the **effective date**; and

    **2.**   Locations reported to **us**, but not shown on the Schedule of the DECLARATIONS, Form RM1000, at which **you** had **personal property** before the **effective date** other than **new locations**.

**R.R.**    **Valuable papers and records** means written or printed documents or records including books, maps, negatives, drawings, abstracts, deeds, mortgages and manuscripts.

## DEFINITIONS (Continued)

S.S.    **Volcanic activity** means direct physical loss or damage to **covered property** directly resulting from:

  1.   Airborne volcanic blast or shockwave;

  2.   Ash, dust or particulate matter; or

  3.   Lava flow.

All **volcanic activity** resulting from volcanic eruptions occurring within any one-hundred sixty-eight (168) hour period will constitute a single **occurrence.**

**Volcanic activity** does not include the cost to remove ash, dust or particulate matter that does not cause direct physical damage to **covered property.**

T.T.    **We, us** and **our(s)** means the company issuing this policy, as shown on the DECLARATIONS, Form RM1000.

U.U.    **Wind** means the direct action of the movement of air at any velocity.

V.V.    **You** and **your(s)** mean the named insured shown on the DECLARATIONS, Form RM1000.

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ADDITIONAL NAMED INSURED

This endorsement modifies insurance provided under the following:

CONDITIONS, Form RM1006

**We** will provide insurance under this policy to each of the persons or organizations shown as an additional named insured on the Schedule of this endorsement.

**We** will adjust any **covered loss** only with **you.**

**You** will pay the premium for the insurance **we** provide to the additional named insureds.  In the event that **you** become bankrupt or insolvent, each additional named insured shall pay the premium for the insurance it receives.

**We** will make **our** payment jointly to **you** and any person or organization shown on the Schedule.

Schedule

| Additional Named Insured | Location |
| --- | --- |
| I Square Management, LLC | 1 Information way , Ste 200<br>Little Rock, AR 72202 |
| WLR Hotels, LLC | 201 South Shackelford Rd<br>Little Rock, AR 72211 |
| HS Hiex Hotel, LLC | 160 Union Ave.<br>Memphis, TN 381013 |
| LIT Hotels, LLC | 3121 Bankhead Dr<br>Little Rock, AR 72206 |
| HS Hix, LLC | 4042 Central Ave.<br>Hot Springs, AR 71913 |
| HS Staybridge, LLC | 206 Metha Ct.<br>Hot Springs, AR 71913 |
| Bhavani, Inc | 704 W Michigan St.<br>Stuttgart, AR 72160 |
| Arkansas Knoxville Hotels, LP | 501 E Hill Ave.<br>Knoxville, TN 37915 |

Copyright 2004, Liberty Mutual Group of Companies - all rights reserved.

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES

| Location | Description of Property | Name and Address of Mortgage Holder or Loss Payee | Interests ("M" for Mortgage Holder) ("LP" for Loss Payee) |
|---|---|---|---|
| 2.1 | RP/PP/BI | HS HIEX LLC<br>160 Union Ave<br>Memphis, TN | M |
| 5.1 | RP/PP/BI | Benefit Street Partners Realty Operating Partnership, L.P.<br>ISAOA ATIMA<br>142 West 57th Street, 12 Floor<br>New York, NY 10019 | M/LP |
| 4.1 and 4.2 | RP/PP/BI | Farmers & Merchants Bank<br>The Bank of Fayetteville<br>708 South Main St<br>Stuttgart, AR 72160 | M |
| 2.1 | RP/PP/BI | Regions Bank<br>ISAOA ATIMA<br>1180 West Peachtree Road, Suite 1400<br>Atlanta, GA 30309 | M |

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EARTH MOVEMENT COVERAGE

This endorsement modifies insurance provided under the following:

EXCLUSIONS, Form RM1003

1.  We will pay for direct physical loss or damage to **covered property** caused by sudden **earth movement** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

    In addition, if coverage is provided for **business income** or **extra expense** in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay for covered loss of **business income** or **extra expense** that results from direct physical loss or damage to **covered property** caused by sudden **earth movement** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

    If **your** policy includes EARTH MOVEMENT SPRINKLER LEAKAGE EXTENSION, Form RM1105, there is no coverage in this endorsement for any loss or damage (including any coverage for **business income** or **extra expense**) resulting from leakage of an automatic fire extinguishing system caused by sudden **earth movement** (see Form RM1105 for any coverage for such loss or damage).

    All **earth movement**, including any earthquake shocks, within a continuous seventy-two (72) hour period will be considered a single **occurrence**.  The expiration of this policy will not reduce this seventy-two (72) hour period.

2.  **Limit of Liability**

    The following **limits of liability** do not increase and are not in addition to any other applicable **limit of liability**.

    A.  The most **we** will pay for all loss or damage, including any loss of **business income** or **extra expense**, for each **occurrence** of sudden **earth movement** loss will be the lesser of the applicable **limit of liability** shown on:

        (1)  The DECLARATIONS, Form RM1000;

        (2)  EXTENSIONS OF COVERAGE, Form RM1002;

        (3)  The Schedule of this endorsement for that particular state or the particular location(s); or

        (4)  Any other applicable endorsement to this policy.

    B.  The most **we** will pay for all loss or damage caused by all sudden **earth movement**, including any loss of **business income** or **extra expense**, during any one (1) policy year is $10,000,000.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

## EARTH MOVEMENT COVERAGE (Continued)

3. Deductible Amount

    **A.** We will not pay for a sudden **earth movement** loss until the loss exceeds either the applicable flat amount deductible or percentage deductible shown for that particular state or the particular location(s) shown on the Schedule of this endorsement. We will then pay the amount of loss in excess of the applicable deductible, up to the applicable **limit of liability**.

    **B.** If a percentage deductible is shown on the Schedule of this endorsement, the deductible amount will be determined as follows:

    We will not pay for an **earth movement** loss until the loss exceeds the greater of:

        **(1)** The sum of multiplying the deductible factor shown on the Schedule of this endorsement for a particular state or location(s) times:

            **a.** the total reported values on file with us for the **covered property** at the **covered location** when and where the loss occurred; plus

            **b.** the full annual **business income** value which **you** would have earned in the twelve (12) month period following the loss had no loss occurred; or

        **(2)** The corresponding minimum deductible amount also shown for that particular state or the particular location(s).

    We will then pay the amount of the loss in excess of the greater of these two (2) amounts up to the applicable **limit of liability**.

    **C.** These deductibles do not apply to **covered property in transit**.

    **D.** If indicated by an asterisk (*) after the deductible amount, a separate deductible amount will apply to any **covered property**, loss of **business income, extra expense**, or any other coverage or peril listed on the Schedule of this endorsement.

4. This endorsement does not apply to, and no **earth movement** coverage is provided for, the following coverage(s):

    Form RM1002, Course of Construction

    Form RM1002, Exhibitions, Expositions, Fairs or Trade Shows

    Form RM1110, Interruption of Services Coverage Extension

    Form RM1002, **Miscellaneous Locations**

    Form RM1002, **New Locations**

# EARTH MOVEMENT COVERAGE (Continued)

5. This endorsement does not apply to, and no **earth movement** coverage is provided for, any **covered property** situated in or at the following state(s) and location(s):

When indicated with an (X), **covered property** at any location situated in:

A.   (X) The State of Alaska;

B.   (X) The State of California;

C.   (X) The State of Hawaii;

D.   (X) The State of Nevada;

E.   (  ) The area defined in this policy as **New Madrid;**

F.   (X) The area defined in this policy as **Puget Sound;**

G.   (X) The Commonwealth of Puerto Rico; and

H.   (  ) Any other location(s) shown below:

Location

Not Applicable

Refer to the last page of this endorsement for the Schedule of States and Locations for which **earth movement** coverage is provided by this policy.

## EARTH MOVEMENT COVERAGE  (Continued)

Schedule of States and Locations

| State or Location | Limit of Liability per occurrence | Limit of Liability in any one (1) policy year | Deductible Amount |
|---|---|---|---|
| Area(s) defined in this policy as **New Madrid.** | $2,500,000 | $2,500,000 | $100,000 |
| Locations not situated in the areas defined on the schedule of states and locations in Item 5 of this endorsement. | $10,000,000 | $10,000,000 | $50,000 |

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLOOD COVERAGE

This endorsement modifies insurance provided under the following:

EXCLUSIONS, Form RM1003

1. We will pay for direct physical loss or damage to **covered property** caused by **flood** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

   In addition, if coverage is provided for **business income** or **extra expense** in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay for covered loss of **business income** or **extra expense** that results from direct physical loss or damage to **covered property** caused by **flood** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

   All **flood** losses within a continuous seventy-two (72) hour period will be considered a single **occurrence.** The expiration of this policy will not reduce this seventy-two (72) hour period.

2. **Limit of Liability**

   The following **limits of liability** do not increase and are not in addition to any other applicable **limit of liability.**

   **A.** The most **we** will pay for all loss or damage, including any loss of **business income** or **extra expense**, for each **occurrence** of **flood** loss within a state(s) or at a location(s) shown on the Schedule of this endorsement will be the lesser of the applicable **limit of liability** shown on:

      **(1)** The DECLARATIONS, Form RM1000;

      **(2)** EXTENSIONS OF COVERAGE, Form RM1002;

      **(3)** The Schedule of this endorsement for that particular state or the particular location(s); or

      **(4)** Any other applicable endorsement to this policy.

   **B.** The most **we** will pay for all loss or damage caused by **flood**, including any loss of **business income** or **extra expense**, during any one (1) policy year is $10,000,000.

3. Deductible Amount

   **A.** We will not pay for a **flood** loss until the loss exceeds either the applicable flat amount deductible or percentage deductible shown for that particular state or the particular location(s) shown on the Schedule of this endorsement. **We** will then pay the amount of loss in excess of the applicable deductible, up to the applicable **limit of liability**.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

# FLOOD COVERAGE (Continued)

B. If a percentage deductible is shown on the Schedule of this endorsement, the deductible amount will be determined as follows:

We will not pay for a **flood** loss until the loss exceeds the greater of:

(1) The sum of multiplying the deductible factor shown on the Schedule of this endorsement for a particular state or location(s) times:

    a.  the total reported values on file with **us** for the **covered property** at the **covered** location when and where the loss occurred; plus

    b.  the full annual **business income** value which **you** would have earned in the twelve (12) month period following the loss had no loss occurred; or

(2) The corresponding minimum deductible amount also shown for that particular state or the particular location(s).

We will then pay the amount of the loss in excess of the greater of these two (2) amounts up to the applicable **limit of liability**.

C. These deductibles do not apply to **covered property in transit**.

D. If indicated by an asterisk (*) after the deductible amount, a separate deductible amount will apply to any **covered property**, loss of **business income**, **extra expense**, or any other coverage or peril listed on the Schedule of this endorsement.

4. This endorsement does not apply to, and no **flood** coverage is provided for, the following coverage(s):

Form RM1002, Course of Construction

Form RM1002, Exhibitions, Expositions, Fairs or Trade Shows

Form RM1110, Interruption of Services Coverage Extension

Form RM1002, **Miscellaneous Locations**

Form RM1002, **New Locations**

5. This endorsement does not apply to, and no **flood** coverage is provided for, any **covered property** situated in or at the following state(s) and location(s):

Not Applicable

Refer to the last page of this endorsement for the Schedule of States and Locations for which **flood** coverage is provided by this policy.

## FLOOD COVERAGE (Continued)

Schedule of States and Locations

| Loc. No. | State or Location | Limit of Liability per occurrence | Limit of Liability in any one (1) policy year | Deductible Amount |
|---|---|---|---|---|
| | Group 1 | $10,000,000 | $10,000,000 | $50,000 |
| 1 | 201 South Shackleford Road Little Rock  AR 72211 | | | |
| 2 | 160 Union Ave Memphis TN  38103 | | | |
| 3 | 3121 Bankhead Dr Little Rock  AR  72206 | | | |
| 4.1 | 704 W Michigan St Stuttgart  AR  72160 Quality Inn and Suites - 1 | | | |
| 4.2 | 704 W Michigan St Stuttgart  AR  72160 Quality Inn and Suites - 2 | | | |
| 5 | 501 E Hill Ave Knoxville TN  37915-2516 | | | |
| 7 | 206 Metha Ct Hot Springs  AR  71913-6182 | | | |
| 8 | 103 Lookout Cir Hot Springs  AR  71913 | | | |

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INTERRUPTION OF SERVICES COVERAGE EXTENSION

This endorsement modifies insurance provided under the following:

        EXTENSIONS OF COVERAGE, Form RM1002
        EXCLUSIONS, Form RM1003

1.  We will pay for physical loss or damage to **covered property**, loss of **business income** and **extra expense** resulting from an interruption of the electrical, heating, air conditioning, refrigeration, telecommunication, steam, water, sewer or fuel service to a location shown on the Schedule of this endorsement, but only if the interruption of service results:

    A.  From physical damage by a **peril insured against**;

    B.  Away from a location shown on the Schedule of this endorsement;

    C.  To the following, if marked with an "X", that directly supply service to the location shown on the Schedule of this endorsement and are either owned, managed or controlled by a company with a contract to supply these services to that location, or are located within one (1) mile of that location:

        (1)  (X)  Any electrical generating plant, substation, power switching station, transformer, gas compressor station, telephone switching facility, water or sewer treatment plant or any other plant or facility responsible for providing the services specified in **1.** above;

        (2)  (X)  Transmission and distribution lines, connections or supply pipes which furnish electricity, steam, gas, refrigeration, telecommunication, water or sewer (other than overhead transmission and distribution lines);

        (3)  ( )  Overhead transmission and distribution lines.

2.  We will not pay for any physical loss or damage to **covered property**, loss of **business income** or **extra expense** due to any interruption of service from:

    A.  A satellite, regardless of cause; or

    B.  The operation of any breaker, switch, device or system designed to preserve or protect any property or system integrity; or

    C.  Any misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting, cleaning, or the performance of maintenance.

3.  Conditions

    A.  This extension applies only to the Coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

                                            

## INTERRUPTION OF SERVICES COVERAGE EXTENSION (Continued)

**B.** This extension, however, does not apply to, and no coverage is provided in conjunction with, Standard Extension of Coverage **A. 7.** Extended **Period of Restoration,** EXTENSIONS OF COVERAGE, Form RM1002, with respect to any loss of **business income** covered solely under this endorsement.

**4. Limit of Liability**

We will not pay more than the applicable **limit of liability** shown on the Schedule of this endorsement for any one (1) **occurrence.** This **limit of liability** does not increase and is not in addition to any other applicable **limit of liability.**

**5.** Waiting Period

If an interruption of service waiting period is shown below or on the Schedule of this endorsement, we will only pay for loss of **business income, extra expense** or for **perishable goods** if the interruption exceeds the specified waiting period. Once the waiting period is met coverage will commence at the initial time of the interruption, and will be subject to any deductible shown in **6.** below or on the Schedule of this endorsement.

The following interruption of service waiting period(s) apply:

**A.**  Equipment Breakdown                              72 Hours

**B.**  All Coverages Except Equipment Breakdown          72 Hours

**6.** Deductible

If the interruption of service exceeds the waiting periods in **5.,** the following deductibles apply to any loss covered under this endorsement unless otherwise shown on the Schedule of this endorsement.

**A.**  Equipment Breakdown

Deductible(s) as specified in **G. 3. a.** and **G. 3. b.** on the DECLARATIONS, Form RM1000, or on the ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

**B.**  All Coverages Except Equipment Breakdown

(1) We will not pay unless a loss covered under this endorsement exceeds $10,000. We will then pay only the amount of loss in excess of this deductible, up to the applicable **limit of liability.**

If a separate deductible is shown below, the foregoing dollar amount deductible does not apply to the loss of **business income** or **extra expense** portion of the loss covered under this endorsement, which will be subject to the following deductible.

(2) Unless otherwise shown on the Schedule of this endorsement, we will not pay for loss of **business income** or **extra expense** until an interruption of service exceeds a time period of Not Applicable immediately following the loss covered under this endorsement. We will then pay only the amount of loss sustained after this period of time, up to the **limit of liability** specified.

For a time deductible shown as days, each day consists of twenty-four (24) consecutive hours.

When an asterisk (*) follows one (1) or more of the applicable deductible amounts described on the Schedule of this endorsement or any other endorsement to this policy, the amounts shown will be applied separately, and are in addition to any other applicable deductible(s).

**7.** Refer to the last page of this endorsement for the Schedule of location(s) for which interruption of services coverage is provided by this policy.

## INTERRUPTION OF SERVICES COVERAGE EXTENSION (Continued)

Schedule

Location(s), Coverage(s), Additional Deductible(s)
or Waiting Periods

**Limit of Liability** or Deductible(s)

**A.** Locations

All covered locations except as indicated in B., C., and D. below.                $100,000

**B.** Coverages

**C.** Additional Deductibles or Waiting Periods

**D.** Other

RM1110 02-11                                                                                    Page  3  of  3

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL DEDUCTIBLES AND WAITING PERIODS

This endorsement modifies insurance provided under the following:

  DECLARATIONS, Form RM1000

**A.**  If **G. 2.** or **G. 3. d.** on Form RM1000 is marked with an (X), the deductibles and waiting periods for the coverages described on the Schedule of this endorsement apply. If not shown on the Schedule of this endorsement the deductibles and waiting periods for all other coverages remain unchanged.

**B.**  If a **covered loss** involves two (2) or more deductibles, we will use no more than the largest of the applicable deductibles unless otherwise provided below.

**C.**  When an asterisk (*) follows one (1) or more of the deductible amounts described on the Schedule of this endorsement, the amounts shown will be applied separately, and are in addition to any other applicable deductible(s).

Schedule

| Description of Coverage Deductible or Waiting Period | Amount of Deductible and Waiting Period |
|---|---|
| All loss or damage to **covered property** (including any **covered loss** of **business income** or **extra expense**) caused by or resulting from **hail** or **wind** (other than **wind** associated with a **named storm**) at all locations covered by this policy. | $25,000 |
| All loss or damage to **covered property** (including any **covered loss** of **business income** or **extra expense**) caused by or resulting from **hail** or **wind** (other than **wind** associated with a **named storm**) at all locations covered by this policy at locations 1.1, 3.1, 7.1 and 8.1. | $50,000 |

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

## ADDITIONAL DEDUCTIBLES AND WAITING PERIODS (continued)

Schedule

Description of Coverage Deductible or Waiting Period

Amount of Deductible and
Waiting Period

**Wind associated with a Named Storm** (Deductible)

A.  All loss or damage to **covered property** caused by or resulting from **wind** associated
with a **Named Storm** will be subject to the deductible obtained by adding up all of the
following with respect to the deductible factors/amounts listed in Paragraph **C.** below:

    1.  the sum of all applicable percentage deductible factors, calculated as described in
Paragraph **B.** below, subject to any applicable minimums or maximums; and

    2.  Any applicable flat deductible amounts.

B.  To determine the amount to be used in Paragraph **A.** for any percentage deductible
factors provided in Paragraph **C.**, multiply the applicable percentage shown by:

    1.  the total reported values on file with **us** for the **covered property** at the
corresponding location(s) (including sub-locations) where the loss occurred; plus

    2.  the full annual loss of **business income** value which **you** would have earned for the
corresponding location (including sub-locations) where the loss occurred in the
twelve (12) month period following the loss had no loss occurred.

## ADDITIONAL DEDUCTIBLES AND WAITING PERIODS (continued)

Schedule

Description of Coverage Deductible or Waiting Period

Amount of Deductible and
Waiting Period

**C.** The following are the deductible factors/amounts to be used for purposes of calculating
the **wind** associated with a **Named Storm** deductible.  If a location (including its sub
locations) falls into two or more of the following categories, the category that more
specifically identifies that location will be the only one that applies to that location for
purposes of calculating its portion of the **wind** associated with a **Named Storm**
deductible:

| Categories (by Group(s), Region(s), State(s), County(ies), Location(s)) | Deductible Factors/Amounts |
| --- | --- |
| **First tier wind Counties and Parishes** | 5% subject to $100,000 minimum |
| Additional First Tier Wind Counties and Independent Cities | $50,000 |
| **Second tier wind Counties and Parishes** | 2% subject to $50,000 minimum |
| Florida; Hawaiian Islands; and Puerto Rico | 5% subject to $250,000 minimum |

**D.** The foregoing **wind** associated with a **Named Storm** deductible is a single
deductible, even if multiple percentages, minimums or flat deductible
factors/amounts apply.

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## STANDARD EXTENSIONS AMENDATORY

This endorsement modifies insurance provided under the following:

EXTENSIONS OF COVERAGE, Form RM1002

The following Standard Extensions of Coverage are amended as shown below when marked with an "X":

Standard Extensions of Coverage

**1.**  ( )  Accounts Receivable

**Our** sublimit under **A. 1. a.** Accounts Receivable is increased from $100,000 to $Not Applicable.

**2.**  ( )  Arson Reward

**Our** sublimit under **A. 2.** Arson Reward is increased from $25,000 to $Not Applicable.

**3.**  ( )  Computer Virus and Denial of Access

**Our** sublimit under **A. 3.** Computer Virus and Denial of Access is increased from $25,000 to $Not Applicable.

**4.**  ( )  Debris Removal Expense

**A.**  **Our** sublimit under **A. 4. b.** Debris Removal Expense is increased from $250,000 to $Not Applicable.

**B.**  **A. 4. c.** Debris Removal Expense is deleted and replaced by the following:

**c.**  We will pay up to $Not Applicable for expenses to remove from a **covered location,** windblown debris of property not covered by this policy.

**5.**  ( )  Deferred Payments

**Our** sublimit under **A. 5. a.** Deferred Payments is increased from $25,000 to $Not Applicable.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

## STANDARD EXTENSIONS AMENDATORY (Continued)

**6. (X)** Extended **Period of Restoration**

    **A. 7. a.** Extended **Period of Restoration** is amended to 180 days in lieu of sixty (60) days.

**7. ( )**Fine Arts

    **Our** sublimit under **A. 9. Fine Arts** is increased from $100,000 to $Not Applicable.

**8. ( )Fungus** Cleanup Expense

    **Our** sublimit under **A. 10. b. Fungus** Cleanup Expense is increased from $250,000 to $Not Applicable.

**9. ( )**Installation of **Personal Property** or **Personal Property of Others**

    **Our** sublimit under **A. 11.** Installation of **Personal Property** or **Personal Property of Others** is increased from $250,000 to $Not Applicable.

**10. ( )** Lock and Key Replacement

    **Our** sublimit under **A. 12. b.** Lock and Key Replacement is increased from $25,000 to $Not Applicable.

**11. ( )** Plants, Trees or Shrubs

    **Our** sublimit under **A. 14.** Plants, Trees or Shrubs is increased from $100,000 to $Not Applicable.

**12. ( ) Pollution** Cleanup Expense

    **A.** **Our** annual aggregate **limit of liability** under **A. 15. b. Pollution** Cleanup Expense is increased from $25,000 to $Not Applicable.

    **B.** **Our** annual aggregate **limit of liability** under **A. 15. c. Pollution** Cleanup Expense is increased from $25,000 to $Not Applicable.

**13. ( )** Professional Fees

    **Our** sublimit under **A. 16. a.** Professional Fees is increased from $25,000 to $Not Applicable.

**14. ( )** Removal

    **A. 17. b. (1)** Removal is deleted and replaced by the following:

    **(1)** For up to NA days at each place to which the property has been taken for preservation;

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## CAP ON LOSSES FROM CERTIFIED ACT(S) OF TERRORISM

This endorsement modifies insurance provided under the following:

> EXCLUSIONS, Form RM1003
> DEFINITIONS, Form RM1007

1. Definition of *Certified Act(s) of Terrorism*

   For the purpose of this endorsement, the italicized phrase *certified act(s) of terrorism* means one (1) or more acts certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States, to be terrorism pursuant to the federal Terrorism Risk Insurance Act, including all amendments (hereafter "TRIA").  The criteria contained in TRIA for *certified act(s) of terrorism* include that the act is a violent act or an act that is dangerous to human life, property or infrastructure, and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. Cap on Losses From *Certified Act(s) of Terrorism*

   If aggregate insured losses attributable to *certified act(s) of terrorism*:

   A.  exceed $100 billion in a program year (January 1 through December 31); and

   B.  we have met **our** deductible under the Act;

   neither we nor the Secretary of the Treasury shall be liable for the payment of any portion of the amount of such losses that exceeds the $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

3. Application of Exclusions

   The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded by this policy, such as losses under **GROUP A** exclusions **A. 1.** and **A. 8.** on EXCLUSIONS, Form RM1003 attached to this policy.

© 2015 Liberty Mutual Insurance.
Includes copyrighted material of Insurance Service Office, Inc., with its permission.

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### ADDITIONAL TYPES OF PROPERTY NOT COVERED AMENDATORY

This endorsement modifies insurance provided under the following:

PROPERTY NOT COVERED, Form RM1004

We do not cover loss to the additional types of property described on the Schedule of this endorsement:

Schedule

| Item No. | Description of Property Not Covered |
|---|---|
| 1 | **All your personal property** more specifically insured under inland marine coverage |

© 2012 Liberty Mutual Insurance. All rights reserved

RM1150 05-12                                                                     Page 1 of 1

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEMOLITION COST, INCREASED CONSTRUCTION COST AND OPERATION OF BUILDING LAWS AMENDATORY

This endorsement modifies insurance provided under the following:

DECLARATIONS, Form RM1000

Items **E. 4. b., E. 4. c.,** and **E. 4. d.** on Form RM1000, are deleted and replaced by the following:

Schedule

| Location(s) | **b.** | Demolition Cost Sublimit of Liability | **c.** | Increased Construction Cost Sublimit of Liability | **d.** | Operation of Building Laws Sublimit of Liability |
|---|---|---|---|---|---|---|
| 2.1 | | 34,000,000 | | 34,000,000 | | 34,000,000 |

© 2012 Liberty Mutual Insurance. All rights reserved

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL FIRST TIER WIND COUNTIES AND INDEPENDENT CITIES (THE STATES OF VIRGINIA THROUGH AND INCLUDING MAINE)

This endorsement modifies insurance provided under the following:

DEFINITIONS, Form RM1007

The following Counties and Independent Cities are added to Item **N. First tier wind Counties and Parishes** on DEFINITIONS, Form RM1007:

Fairfield, Middlesex, New Haven and New London Counties in the State of Connecticut;

Sussex County in the State of Delaware;

Cumberland, Hancock, Knox, Lincoln, Penobscot, Sagadahoc, Waldo, Washington and York Counties in the State of Maine;

Somerset and Worcester Counties in the State of Maryland;

Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth and Suffolk Counties in the State of Massachusetts;

Rockingham County in the State of New Hampshire;

Bronx, Kings, Nassau, New York, Queens, Richmond and Suffolk Counties in the State of New York;

Bristol, Newport and Washington Counties in the State of Rhode Island; and

Accomack, Gloucester, Hampton, Lancaster, Mathews, Middlesex, Newport News, Norfolk, Northampton, Northumberland, Poquoson, Portsmouth, Virginia Beach, Williamsburg and York Counties and Independent Cities in the State of Virginia.

© 2012 Liberty Mutual Insurance. All rights reserved

Policy number YU2-L9L-467767-118`

This endorsement is effective 09/01/2018 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PROPERTY EXTENSION FOR HOTELS

This endorsement modifies insurance provided under the following:

> DECLARATIONS, Form RM1000
> EXTENSIONS OF COVERAGE, Form RM1002

1.  The Sublimits of Liability and corresponding Extensions of Coverage below are added to **E. 4.** of DECLARATIONS, Form RM1000, and **B.** of EXTENSIONS OF COVERAGE, Form RM1002, respectively, subject to the deductible(s) in **G. 1.** and **G. 2.** of DECLARATIONS, Form RM1000:

    **A.**  Sublimits of Liability

    *(1)*  *Hotel Guest(s)* Emergency Evacuation Expenses

    $10000 per **occurrence.**

    *(2)*  *Hotel Guest(s)* Relocation Expenses

    $2500   per *hotel guest* in any one (1) **occurrence.**

    $10000 in any one (1) **occurrence** for all of **your** *hotel guests.*

    *(3)*  *Hotel Guest(s)* **Personal Property**

    $10000 per *hotel guest* in any one (1) **occurrence.**

    $10000 in any one (1) **occurrence** for all of **your** *hotel guests.*

    **(4)**  Tenant Emergency Evacuation Expenses

    $10000 per **occurrence.**

    **(5)**  Tenant Relocation and Move Back Expenses

    $10000 in any one (1) **occurrence** for all *covered moving costs.*

    **B.**  Extensions of Coverage

    *(1)*  *Hotel Guest(s)* Emergency Evacuation Expenses

    **We** will reimburse **you** for the reasonable and necessary costs or expenses **you** incur to evacuate **your** *hotel guests,* and any other lawful occupants, from a **covered location,** when a civil or military authority having jurisdiction orders **you** to evacuate due to an imminent threat by a **peril insured against** to life or well-being at that **covered location.**

© 2013 Liberty Mutual Insurance. All rights reserved.

## PROPERTY EXTENSION FOR HOTELS (Continued)

We will not reimburse **you**, however, for any expenses arising out of any planned evacuation drill, medical condition, or false alarm.

*(2) Hotel Guest(s)* Relocation Expenses

We will pay **you** the reasonable and necessary costs or expenses **you** incur as a result of reimbursing the expenses of **your** *hotel guest(s)* for whom paid prearranged hotel accommodations cannot be honored because of direct physical loss or damage resulting from a **covered loss**, including expenses **your** *hotel guest(s)* incurred:

(a)  to secure and use other comparable hotel accommodations close to **your covered location**;

(b)  while traveling to and from **your covered location** to the location where the comparable hotel accommodations are secured; and

(c)  for prepaid amounts spent for activities away from the **covered location** which are lost, and not reimbursable by the activity vendor, because other comparable accommodations within a reasonable distance from **your covered location** are unavailable;

but only for the period of time beginning on the date the *hotel guest(s)* prearranged hotel accommodations at the **covered location** are scheduled to begin or are interrupted (whichever is later), and ending on the earliest of:

(a)  the date **you** are able to honor the *hotel guest(s)* accommodations; or

(b)  the date the *hotel guest(s)* prearranged hotel accommodations at the **covered location** were scheduled to end; or thirty (30) days following the **covered loss**.

*(3) Hotel Guest(s)* **Personal Property**

We will pay for direct physical loss or damage to **your** *hotel guest(s)* **personal property** while at a **covered location** (other than any **personal property** located in, on, or attached to a vehicle, for which there is no coverage), including **your** *hotel guest(s)* room, from any **peril insured against** other than theft or attempted theft (which is specifically not covered by this endorsement).

(4)  Tenant Emergency Evacuation Expenses

We will reimburse **you** for the reasonable and necessary costs or expenses **you** incur to evacuate **your** tenants from a **covered location**, when a civil or military authority having jurisdiction orders **you** to evacuate due to an imminent threat by a **peril insured against** to life or well-being at that **covered location**.

We will not reimburse **you**, however, for any expenses arising out of any planned evacuation drill, medical condition, or false alarm.

(5)  Tenant Relocation and Move Back Expenses

We will pay for *covered moving costs* incurred by **you** with respect to relocating and moving tenants who temporarily vacate **your covered locations** due to loss or damage from a **covered loss**.

2.  For the purpose of this endorsement the following italicized terms have the following definitions:

A.  *Covered moving costs* means the reasonable and necessary costs **you** incur for:

(1)  Packing and transporting tenants' property;

## PROPERTY EXTENSION FOR HOTELS (Continued)

(2) Reestablishing utility services, less any refunds from discontinued service at **your** covered building;

(3) Assembling and setting up tenants' fixtures and equipment at **your** covered building; and

(4) Unpacking and reshelving tenants' stock and supplies at **your** covered building.

All *covered moving costs* must be incurred no later than sixty (60) days after the building repairs have been completed. We will pay for *covered moving costs* whether or not the tenant(s) move back before the expiration date of this policy.

*Covered moving costs*, however do not include any loss, cost, expense or other payments made to the landlord or lessor of other premises.

*B. Hotel Guest(s)* means any person(s) with a valid reservation or prearranged hotel accommodations at a **covered location.**

3. The sublimits of liability payable under this endorsement do not increase and are not in addition to any other applicable **limit of liability**.

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE**

This endorsement modifies insurance provided under the following:

COVERAGES, Form RM1001

1.   If coverage for Equipment Breakdown is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay up to the sublimit of liability shown for each of the extensions described below.

These extensions of coverage do not increase the **limit of liability** under this coverage.

**A.**   Expediting Expenses Coverage

We will pay up to a sublimit of $100,000 for the reasonable extra costs of temporary repair to property or of expediting the permanent repair or replacement of the property, whichever is less.  Expenses **we** will cover include overtime wages and extra costs for rapid means of transportation.

We will not cover expenses for temporary rental of property or temporary replacement of damaged property under this extension of coverage.  **We** will pay only for expediting expenses caused by an **accident** to an **object**.

**B.**   *Hazardous Substances* Coverage

We will pay up to a sublimit of $100,000 for **extra expenses** to clean up, repair, replace or dispose of property that is damaged, contaminated or polluted by a *hazardous substance*.  The damage, contamination or **pollution** must result from an **accident** to an **object**.

As used here, **extra expenses** will mean expenses incurred beyond those for which **we** would have been liable if no *hazardous substance* had been involved.

**C.**   Perishable Goods Coverage

**(1)**   **We** will pay up to a sublimit of $100,000 for:

**a.**   physical damage to **perishable goods** due to spoilage;

**b.**   physical damage to **perishable goods** due to contamination from the release of refrigerant, including but not limited to ammonia;

**c.**   any necessary expenses **you** incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

## EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE (Continued)

(2) If **you** are unable to replace the **perishable goods** before its anticipated sale, the amount of **our** payment will be determined on the basis of the sales price of the **perishable goods** at the time of the **accident**, less discounts and expenses **you** otherwise would have had. Otherwise **our** payment will be determined in accordance with the valuations endorsement.

(3) As used here, **covered property** does not include animals.

**D.** Data Restoration

**We** will pay up to a sublimit of $100,000 for **your** reasonable and necessary cost to research, replace and restore lost **data**.

**2.** If coverage for Equipment Breakdown is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, the coverage provided by this policy is extended as follows:

**A.** Water Damage Coverage

**We** will pay for loss to property, including the cost of salvage, caused by water, if such damage results from an **accident to an object**.

**B.** CFC Refrigerants

**We** will pay for the additional cost to repair or replace **covered property** because of the use or presence of a refrigerant containing CFC (chlorinated fluorocarbon) substances. This means the **extra expense** to do the least expensive of the following:

(1) Repair the damaged property and replace any lost CFC refrigerant;

(2) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(3) Replace the system with one (1) using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.

**We** will also pay for the additional loss as described in loss of **business income and extra expense** coverages caused by such loss, if these coverages are indicated in the DECLARATIONS, Form RM1000.

**3.** For the purpose of this endorsement the italicized term *hazardous substance* means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ARKANSAS CHANGES

This endorsement applies only to **covered property** located in Arkansas, and modifies insurance provided under the following:

CONDITIONS, Form RM1006

1.  Items **1.** and **3.** of **B.** Appraisal are replaced by the following:

   **B.  Appraisal**

   1.  If **you** fail to agree with **us** on the amount of a loss, either party may require that the amount be submitted for appraisal. However, an appraisal will be made only if both parties agree, voluntarily, to have the loss appraised. Requests for appraisal will be made in writing. Each party will then choose a competent independent appraiser. Each party will notify the other of the identity of its appraiser within sixty (60) days of the written request for appraisal.

   3.  The appraisers will then set the amount of the loss. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will set the amount of loss. An appraisal decision will not be binding on the parties involved.

2.  Item **Y.** Suit is replaced with the following:

   **Y.  Suit**

   No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the policy terms and conditions. Any suit against **us** must be brought within five (5) years after the date on which the direct physical loss or damage occurred.

3.  Item **X.** Subrogation is replaced by the following:

   **X.  Subrogation**

   1.  If **we** make payment for a loss, **you** will assign to **us** all **your** rights of recovery against any party for that loss.  **We** will not acquire any rights of recovery **you** have waived prior to the loss. **You** agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss.

   2.  **We** will be entitled to recovery only after **you** have been fully compensated for the loss pursuant to the terms and conditions of this Policy.

   3.  **You** will be paid your provable uninsured loss after any legal fees and expenses have been deducted.

© 2017 Liberty Mutual Insurance

## ARKANSAS CHANGES (Continued)

4.   Whenever used in this policy, the term depreciation means expense depreciation, which is defined as depreciation, including but not limited to the cost of goods, materials, labor and services necessary to replace, repair or rebuild damaged **covered property**.

In accordance with ARK. CODE ANN. § 23-88-106, **we** are notifying **you** that **we** may apply depreciation, as defined above, pursuant to the terms of the policy. If depreciation is applied to a loss for damaged **covered property**, **we** shall provide a written explanation as to how the depreciation was calculated.

Policy number YU2-L9L-467767-118

This endorsement is effective 09/01/2018 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CONDITIONS, Form RM1006

1.  Item **3.** of **F.** Cancellation is replaced with the following:

    **3.**  If this policy has been in effect for sixty (60) days or more or is a renewal of a policy **we** issued, **we** may cancel this policy by giving **you** and any lien holder or loss payee named in the policy written notice of cancellation at least:

        **a.**  Ten (10) days before the date of cancellation if **we** cancel for nonpayment of premium;

        **b.**  Sixty (60) days before the date of cancellation if **we** cancel for one (1) or more of the following reasons:

            **(1)**  Discovery of fraud or material misrepresentation by **you** in obtaining this policy or in pursuing a claim under this policy;

            **(2)**  The occurrence of a material change in the risk that substantially increases any hazard insured against under this policy;

            **(3)**  Violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to **covered property** which substantially increases any hazard insured against under this policy;

            **(4)**  Nonpayment of membership dues in those cases in which the bylaws, agreements, or other legal instruments require payment as a condition of the issuance and maintenance of this policy; or

            **(5)**  A material violation of a material provision of this policy.

2.  Item **7.** of **F.** Cancellation is replaced with the following:

    **7.**  **a.**  If this policy is canceled, we will send **you** any premium refund due.

        **b.**  We will refund the pro rata unearned premium if the policy is:

            **(1)**  Canceled by **us** or at **our** request;

            **(2)**  Canceled but rewritten with **us** or in **our** company group; or

            **(3)**  Canceled because **you** no longer have an insurable interest in the property or business operation that is the subject of this insurance.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

## ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL (Continued)

    **c.** If this policy is canceled at **your** request, other than a cancellation described in **7. b. (2)** and **(3)** above, **we** will refund ninety (90)% of the pro rata unearned premium. However, the refund will be less than ninety (90)% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by **us** to an amount less than the minimum premium for this policy.

    **d.** The cancellation will be effective even if **we** have not yet made or offered a refund.

    **e.** If **you** cancel the policy, **we** will retain no less than $100 of the premium and **we** will retain no less than $250 of the premium if coverage is provided for equipment breakdown.

**3.** Item **5.** of **M.** Mortgage Holders is replaced with the following:

    **5.** If **we** decide not to renew this policy, **we** will give written notice to the mortgage holder:

        **a.** As soon as practicable if nonrenewal is due to **your** failure to pay any premium required for renewal; or

        **b.** At least sixty (60) days before the expiration date of this policy, if the nonrenewal is for any other reason.

**4.** Item **1.** of **P.** Nonrenewal is replaced with the following:

    **1.** If **we** decide not to renew this policy, **we** will mail or deliver a written notice of nonrenewal to **you** and any lien holder or loss payee named in the policy at least sixty (60) days before the expiration date of this policy. Notice will be sent to **your** last mailing address known to **us**. **We** will state the reason for nonrenewal.

    However, **we** are not required to send this notice if nonrenewal is due to **your** failure to pay any premium required for renewal.

The provisions of Item **P.** Nonrenewal do not apply to any mortgage holder.

Policy number YU2-L9L-467767-118

## Arkansas Notice to Policyholders :

To assist in the communication of suggestions, complaints, or comments, Arkansas Act 197, House Bill 1221 requires that policyholders know the addresses of our customer service department and the consumer division of the department of insurance. These addresses are:

LIBERTY MUTUAL INSURANCE GROUP
10800 FINANCIAL CENTRE PARKWAY
SUITE 300
LITTLE ROCK AR 72211
Telephone number: (501) 224-4300

ARKANSAS INSURANCE DEPARTMENT
1200 W 3ᴿᴰ ST
LITTLE ROCK AR 72201
Telephone number: (501) 371-2640 or
Toll-free telephone number: 1-800-852-5494

EN4003 01-10

Page 1 of 1

Policy number YU2-L9L-467767-118

# DISCLOSURE - TERRORISM RISK INSURANCE ACT

**THIS FORM IS MADE PART OF YOUR POLICY PURSUANT TO THE TERRORISM RISK INSURANCE ACT.**

In accordance with the Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), we are required to provide you with a notice of the portion of your premium attributable to coverage for "certified acts of terrorism," the federal share of payment of losses from such acts, and the limitation or "cap" on our liability under the Act.

**Disclosure of Premium**

The Company has made available coverage for "certified acts of terrorism" as defined in the Act. If purchased, the portion of your premium attributable to coverage for "certified acts of terrorism" is shown on the DECLARATIONS, or elsewhere by endorsement in your policy.

THE TERRORISM RISK INSURANCE ACT

The Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), establishes a program to spread the risk of catastrophic losses from certain acts of terrorism between insurers and the federal government. If an individual insurer's losses from a "certified act of terrorism" exceed a specified deductible amount, the government will reimburse the insurer for a percentage of losses (the "Federal Share") paid in excess of the deductible but only if aggregate industry losses from such an act exceed the "Program Trigger". An insurer that has met its insurer deductible is not liable for any portion of losses in excess of $100 billion per year. Similarly, the federal government is not liable for any losses covered by the Act that exceed this amount. If aggregate insured losses exceed $100 billion, losses up to that amount may be pro-rated, as determined by the Secretary of the Treasury.

The Federal Share and Program Trigger by calendar year are:

| Calendar Year | Federal Share | Program Trigger |
|---|---|---|
| 2015 | 85% | $100,000,000 |
| 2016 | 84% | $120,000,000 |
| 2017 | 83% | $140,000,000 |
| 2018 | 82% | $160,000,000 |
| 2019 | 81% | $180,000,000 |
| 2020 | 80% | $200,000,000 |

© 2015 Liberty Mutual Insurance.

## DISCLOSURE - TERRORISM RISK INSURANCE ACT (Continued)

MANDATORY AVAILABILITY OF COVERAGE FOR "CERTIFIED ACTS OF TERRORISM"

TRIA requires insurers to make coverage available for any loss that occurs within the United States (or outside of the U.S. in the case of U.S. missions and certain air carriers and vessels), results from a "certified act of terrorism" AND that is otherwise covered under your policy.

A "certified act of terrorism" means:

[A]ny act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States

    (i)  to be an act of terrorism;

    (ii) to be a violent act or an act that is dangerous to –

        (I)   human life;

        (II)  property; or

        (III) Infrastructure;

    (iii) to have resulted in damage within the United States, or outside of the United States in the case of –

        (I)  an air carrier  (as defined in section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or

        (II) the premises of a United States mission; and

    (iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**POLICYHOLDER NOTICE - COMPANY CONTACT INFORMATION**

In the event you need to contact someone about this policy for any reason, please contact your Sales Representative or Producer of Record as shown on the policy Declarations or Information Page.

If you have additional questions, you may contact the company at the following address:

**Liberty Mutual Insurance**
**175 Berkeley Street**
**Boston, MA 02116**
**(617) 357-9500 Ext. 41015**