IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

I SQUARE MANAGEMENT LLC and
ARKANSAS KNOXVILLE HOTEL, LP                                        PLAINTIFFS

v.                              CIVIL NO 4:19-cv-00922-JM

MCGRIFF INSURANCE SERVICES, INC.                                    DEFENDANT

## ORDER

This is a professional negligence action by I Square Management LLC ("I Square") and Arkansas Knoxville Hotel, LP ("AKH") against their insurance agent, McGriff Insurance Services ("McGriff"). The case arises out of a February 23, 2019 flood that damaged property stored by Plaintiffs at an off-site warehouse in Knoxville, Tennessee during the course of one of their hotel renovations. The case was originally filed in the Pulaski County Circuit Court in Arkansas and was removed by McGriff based on diversity of citizenship. The Court has jurisdiction over this action, and Arkansas's substantive law applies.

Multiple motions are pending in this case and are ripe for determination: Defendant's Motion for Summary Judgment (Doc. No. 156): Defendant's Objection and Motion to Strike Certain of Plaintiffs' Summary Judgment Response and Exhibits (Doc. No. 179); Defendant's Motions to Exclude the Testimony of Todd Burchett, Farris Jackson, and Robert Anderson (Doc. Nos. 145, 147, and 149); Plaintiffs' Motion to Exclude Expert Opinion Testimony on the Issue of "Special Relationship" (Doc. No. 152); and Plaintiffs' Motion to Exclude the Testimony of Defense Expert Witness Michael McGovern (Doc. No. 154).

### McGriff's Objection and Motion to
### Strike Certain Parts of Plaintiffs' Response and Exhibits

McGriff asks that certain evidence contained in the declarations of Shash Goyal and Stephen LaFrance that is (a) related to Mr. LaFrance's social and business relationship with John Pierron; (b) concerning LaFrance's opinions of Pierron and McGriff and insurance issues; and (c) concerning Goyal's opinions about LaFrance and his business, be excluded from consideration. McGriff relies on Rule 401 and 403 of the Federal Rules of Evidence in requesting the exclusions. After carefully reviewing the motion and the response (Doc. No. 193, sealed), the motion to exclude this evidence for purposes of the summary judgment motion is denied.

### McGriff's Motion for Summary Judgment

To prevail on their claim of negligence against McGriff, Plaintiffs must first prove that McGriff owed them a duty of care. The question of whether a duty is owed by a defendant to a plaintiff is always a question of law. *Mans v. Peoples Bank of Imboden*, 10 S.W.3d 885 (Ark. 2000). It is well established under Arkansas law that an insurance agent or broker has no duty to advise the insured as to different coverages or to investigate to ensure that the insured is adequately covered; rather, the Courts have placed that responsibly squarely on the insured to "educate himself concerning matters of insurance coverage." *Scott-Huff Ins. Agency v. Sandusky*, 887 S.W.2d 516, 517 (Ark. 1994) (quoting *Howell v. Bullock*, 764 S.W.2d 422, 424 (Ark. 1989)).

Arkansas has recognized a very limited exception to this rule "where there is a special relationship between the agent and the insured, as can be evidenced by "an established and ongoing relationship over a period of time, with the agent being actively involved in the client's business affairs and regularly giving advice and assistance in maintaining proper coverage for

the client." *Buelow v. Madlock*, 206 S.W.3d 890, 893 (Ark. App. 2005) (quoting *Stokes v. Harrell,* 711 S.W.2d 755 (Ark. 1986)). "The existence of a special relationship presents a question of fact." *Id.* The court in *Buelow* further expounded on the proof required to show a special relationship exists between an insured and an insurance agent:

> An insured can demonstrate a special relationship by showing that there exists something more than the standard insurer-insured relationship. This depends upon the particular relationship between the parties and is determined on a case-by-case basis. Examples include express agreement, long established relationships of entrustment in which the agent clearly appreciates the duty of giving advice, additional compensation apart from premium payments, and the agent holding out as a highly-skilled expert coupled with reliance by the insured.

*Id.* (quoting *Sintros v. Hamon*, 810 A.2d 553 (N.H. 2002)). *See also Temple v. Bancinsure, Inc.*, No. 1:10-CV-01059, 2012 WL 4458186, at *4 (W.D. Ark. Sept. 25, 2012).

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp.,* at 327. "[S]ummary judgment is ... [the] moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.". *TCF Nat. Bank v. Mkt. Intel., Inc.*, 812 F.3d 701, 707 (8th Cir. 2016) (quoting *UnitedHealth Group Inc. v. Columbia Cas. Co.,* 47 F.Supp.3d 863, 872 (D.Minn.2014). First the Court must determine if I Square has presented a factual basis from which a reasonable jury could find that a special relationship as defined by Arkansas law existed between Plaintiffs and McGriff.

3

Background

Sash Goyal is the chairman, CEO, and sole member of I Square, a hotel management company. Goyal and his good friend, Dr. Raj Chakka formed AKH in June 2017 for the purpose of purchasing and renovating a Marriott hotel located at 501 E. Hill Avenue in Knoxville, Tennessee ("the Hotel"). AKH then hired I Square to manage the Hotel.[1] In addition to being a partner in AKH, Chakka was an investor in multiple hotels managed by I Square. Chakka brought in his friend of over ten years, Stephen LaFrance, as an additional investor in the hotels.[2]

LaFrance and John Pierron, an insurance agent for McGriff,[3] had been good friends for decades. They golfed together, took trips together, and their families socialized together. In addition, when LaFrance owned USA Drugs, Pierron wrote and serviced substantially all of the business's property and casualty insurance. When Walgreens bought USA Drugs, Pierron lost a lot of business. In 2016, he asked LaFrance to help him create new business, and LaFrance agreed, wanting to help his friend.[4]

In December 2016, LaFrance encouraged I Square to use Pierron as its insurance agent.[5] At this point, I Square had no relationship with Pierron or McGriff, and all of its insurance needs were handled by an agency out of Pine Bluff, Arkansas. LaFrance thought that his friend could better handle the complex "web of insurance policies" held by I Square, and he wanted him to have the business. LaFrance also wanted all of his considerable investments with one insurance agency and with Pierron. In January of 2017, LaFrance followed up with Goyal "to make sure he

---
[1] Plaintiffs' Responses to Defendant's Statement of Undisputed Facts, Doc. 170.
[2] Declaration of Sash Goyal, Doc. 171-5.
[3] Pierron formerly worked for Regions insurance which was bought by McGriff.
[4] Declaration of Stephen LaFrance, Doc. 171-6.
[5] Doc. 171-5, 6.

4

had reached out and made contact with John."[6]

Because LaFrance was an investor in I Square's hotels and a successful businessman—and because he became an investor through Goyal's friend and business partner Chakka—Goyal took LaFrance's recommendation and agreed to meet with Pierron. At a meeting in early 2017, Pierron and his colleague, Nick Hall, pitched the McGriff agency to I Square as being more qualified, more sophisticated, and having experience that better qualified McGriff to handle I Square's insurance needs. I Square decided to do business with McGriff, believing that Pierron and Hall had taken a personal interest in I Square and would be sure to better serve it.[7] Goyal signed a Broker of Record letters granting exclusivity to Pierron which allowed McGriff to take over I Square's existing policies. For several months, until the policy renewal dates, McGriff serviced policies I Square already had in place. During this time, McGriff met with I Square several times about its existing hotel construction and renovation projects.[8]

After these meetings, McGriff advised I Square to secure one insurance policy from Liberty Mutual Fire Insurance that would cover all its hotel operations, including all of the hotels it was managing and its multiple hotel construction and renovation projects. I Square took the advice and purchased the policy effective September of 2017.[9] Plaintiffs did not read the Liberty Mutual Policy.[10] At the time McGriff made its sales pitch, I Square was involved in two northwest Arkansas hotel projects that were included in the Liberty Mutual Policy. At some point I Square "specifically told Mr. Hall about warehousing and off-site storage being used in those projects," and Hall worked with Liberty Mutual to obtain builder's risk insurance and to

---

[6] Doc. 175-6.
[7] Doc. 171-5.
[8] *Id.*
[9] *Id.*
[10] Doc. 170.

cover the fixtures, furniture, and equipment (FF&E) located in the off-site storage.[11]

AKH contracted with Central Construction Group (CCG) to act as the general contractor overseeing the Hotel renovations. CCG hired logistics manager Sheli McNeely and, in the Spring of 2018, gave her the job of securing a warehouse for the storage of FF&E related to the Hotel project until it could be installed in the Hotel.[12] The FF&E was owned by AKH. I Square and CCG signed a contract with Armstrong Relocation Company ("Armstrong") on May 31, 2018 to lease a warehouse located at 1605 Prosser Road in Knoxville. CCG tasked McNeely to obtain proof of insurance for the warehouse and the FF&E. On June 1, 2018, Armstrong obtained Certificates of Insurance for the warehouse from its insurer, Travelers Insurance, and provided those to CCG and I Square.[13]

On February 23, 2019, a large rainstorm occurred in Knoxville that caused the warehouse to flood with water and damage the FF&E that I Square had stored there. The FE&E stored in the warehouse was not covered under the Liberty Mutual policy or the Traveler's Insurance policy.

## Discussion

Plaintiffs make three arguments to support their claim that a special relationship existed between them and McGriff. First, Plaintiffs point to Goyal's declaration in which he states that Plaintiffs specifically told Hall about the warehousing of FF&E for the two hotels in Northwest Arkansas and "asked him about builder's risk insurance and to consider obtaining it for us, and in order to cover potential losses to the FF&E stored in those warehouses" and that Hall then "worked with Liberty Mutual to obtain builder's risk" for the Northwest Arkansas projects.

---

[11] Doc. 175.
[12] Doc. 170.
[13] *Id.*

Plaintiffs conclude that this shows that Hall was "integral to the team and advised Plaintiffs regarding warehousing and the need for builder's risk insurance needs."[14] The Court disagrees with this conclusion. These facts only show that when Hall was specifically told about a client's off-site storage that needed insuring, he made sure it was insured. This did not give rise to a special relationship from which Hall had a duty to inspect a construction contract sent to him by Plaintiffs to ascertain whether there was offsite storage being used in the Knoxville project that it was incumbent on him to advise Plaintiffs about.

Second, Plaintiffs argue that Hall's "knowledge[ ] of the need for off-site storage of FF&E in these hotel projects" is somehow proof of a the existence of a special relationship.[15] Again, the fact that Hall knew that I Square had used offsite storage on two of its projects did not shift the responsibility to him to investigate I Square's ongoing projects to make sure that any future off-site storage locations should be added to Plaintiffs' Liberty Mutual policy.

Finally, Plaintiffs rely on two email chains attached as Exhibits A and C to Plaintiffs' Response as evidence of a special relationship between Plaintiffs and McGriff. The Court has reviewed the emails and does not find them to be evidence that could support a finding of a special relationship.

In analyzing the issue of whether Plaintiffs have presented sufficient proof to survive McGriff's summary judgment motion, the Court is relying on the evidence the parties directed the Court to consider in the summary judgment record. *Rodgers v. City of Des Moines*, 435 F.3d 904 (8th Cir. 2006). When viewed most favorably to Plaintiffs, the facts do not leave room for a reasonable jury to find that a special relationship existed between Plaintiffs and McGriff. The close friendship and relationship of I Square's *investor* Stephen LaFrance to McGriff's agent

---

[14] Doc. 169, p. 9.
[15] Doc. 169, p. 10.

John Pierron does not translate into a special relationship between Plaintiffs and McGriff. Plaintiffs submitted LaFrance's declaration in opposition to the summary judgment motion in which he states that that he regularly gave advice to Goyal and Chakka about Plaintiffs' business; this fact, likewise, does not lead to an inference that McGriff was involved in advising Plaintiffs on their business ventures. The parties' relationship began in early 2017, about two years before the flood.[16] The fact that investor LaFrance had a prior insured-insurer relationship with Pierron does not piggyback onto Plaintiffs' two-year relationship with McGriff. The evidence put forth by Plaintiffs, taken as true, does not prove that McGriff was an "integral part of the team" who was actively involved in Plaintiffs' business affairs. Rather, these facts show nothing beyond that of an ordinary insurance broker responding to its client. Defendant's motion for summary judgment is granted on the basis that McGriff had no duty to Plaintiffs under Arkansas law. Therefore, the Court need not address the remaining bases for summary judgment.

Conclusion

Defendant's Objection and Motion to Strike Certain of Plaintiffs' Summary Judgment Response and Exhibits (Doc. No. 179) is DENIED; Defendant's Motion for Summary Judgment (Doc. No. 156) is GRANTED. The remaining motions (Doc. Nos. 145, 147, 149, 152, and 154) are DENIED as moot, as is the Joint Motion for Pretrial Conference (Doc. No. 194).

IT IS SO ORDERED this 16th day of July, 2021.

_____
UNITED STATES DISTRICT JUDGE

---

[16] Unlike the facts in *Warren v. Holland*, 2016 WL 6609194 (W.D. Ark., Nov. 8, 2016) where a jury could have found a decades-long relationship.